[Sac. No. 5264. In Bank.—August 1, 1939.]

J. T. HAMES et al., Respondents, v. JOHN A. RUST et al., Defendants; DEER CREEK UNION MINING COMPANY (a Corporation), Appellant.

Busick & Busick for Appellant.

H. Ward Sheldon for Respondents.

THE COURT.—Defendant Deer Creek Union Mining Company appeals from an order granting a new trial to the plaintiffs on the ground of insufficiency of the evidence.

The action is one to quiet title in and to certain mining property. It appears that the plaintiffs claim an interest in the property by reason of a contract of purchase entered into with the owner Nihell on October 29, 1937, which contract amended or superseded an earlier contract substantially to the same effect and bearing date June 21, 1937. The interest of the defendant mining company in the property arises under a lease with option to purchase also executed by Nihell as owner on or about October 27, 1934, and thereafter assigned by the lessees therein named to the defendant mining company. As shall later appear, plaintiffs' contract

made reference thereto. Inasmuch as the instrument under which the defendant mining company asserts its adverse claim antedates by several years the plaintiffs' interest in the property, the former would take priority unless, as alleged and contended by the plaintiffs, the defendant has defaulted in the performance of the conditions specified in its agreement and has lost and forfeited all rights thereunder. At the conclusion of the trial, the court below found that the defendant mining company had defaulted in the performance of its obligations under its lease in that it had ceased to operate the property for a continuous period in excess of thirty days and also had failed to make the instalment payments required of it. But, the court went on to find that the owner Nihell had thereafter granted to the defaulting defendant an extension of time within which to perform the terms and conditions of its contract and that its rights in and to the property had not therefore been forfeited or terminated. However, as already indicated, the court below subsequently granted the plaintiffs' motion for a new trial on the ground of insufficiency of the evidence, the propriety of such order being challenged upon this appeal by the defendant mining company.

Examination of the entire record, including the evidence, definitely indicates that default had occurred in the defendant's performance under its agreement. Therefore the rights of the litigants in and to the property must turn ultimately upon the issue whether the owner Nihell had waived and excused the defendant's default by granting an extension of time. The evidence addressed to this point is decidedly unsatisfactory and in many instances conflicting which fact undoubtedly prompted the court below, in the exercise of its discretion, to grant the plaintiffs' motion for a new trial. As shall presently appear, the attitude of the owner Nihell is difficult to comprehend for after he had entered into agreements covering the same property with both sides to this controversy he undertook to and did collect moneys from each when he must have known that the interests of one were necessarily adverse to the other and that collections could only properly be made from one.

Illustrative of the unsatisfactory and conflicting nature of the evidence touching the waiver issue, is the unequivocal declaration by the owner Nihell in the plaintiffs' contract of

purchase to the effect that the defendant mining company was "in default" under its agreement and that as owner he had given "written notice of such default and believes that said contract is of no further force and effect . . . ".

While on the witness stand the plaintiff Hames testified that written notice of default signed by the plaintiffs and Nihell had been served on the defendant mining company and its assignors between the dates of July 8 and 10, 1937, and that when plaintiffs' contract was executed he knew that the owner Nihell had theretofore executed a contract with the defendant's assignors but that "Nihell said the contract was in default".

The witness Nihell, called by the plaintiffs under section 2055 of the Code of Civil Procedure, testified that in October, 1934, he entered into a contract with the defendant's assignors for the sale of the land; that all of the stipulated payments were not made as therein specified but "a settlement was made" and at that time he "excused" further payments; that when he entered into the contract with plaintiffs in 1937, "an arrangement had been made" with the defendant settling all payments due under its contract; and that when so contracting with the plaintiffs he knew the defendant's contract "was still good and still valid". At this point, the trial court interrupted to state that "It looks like he sold it twice, to both parties; it is a funny proposition. This thing certainly would bear some investigation. I don't understand this." A little earlier in the trial the court below had directed the attention of counsel for the defendant herein to the fact that upon a prior occasion when said counsel had represented Nihell in other litigation, the court had "understood from Mr. Nihell that the other [defendant's] contract was not in force" which contract "you [counsel for defendant] now tell me is valid". The court thereupon observed that counsel's "position is rather inconsistent" in view of the fact that his former client, Nihell the owner, "at the other trial . . . took the position that the contract that the other party [defendant herein] had was void". The court expressed surprise at Nihell's "about face" in the matter and concluded by stating that "Now he [Nihell] comes in and says that the other contract [defendant's contract] is in good standing. I have a notion to throw the whole thing out. I am disgusted with the whole thing."

Counsel for plaintiffs thereupon undertook to examine Nihell with regard to the "Notice of Default" (plaintiffs' exhibit No. 4) to which his signature admittedly was appended and the witness stated that he "didn't understand" the instrument when he signed it. This caused the court below to declare: "How can you get any place with testimony of that kind? He doesn't remember, doesn't understand, doesn't know anything about it. It is useless to proceed with a witness of that stamp and that kind of recollection. He doesn't know anything about his contract or anything, although it is his property and he makes the contracts."

In his effort to impeach the witness Nihell, counsel for plaintiffs called to his attention his answers given upon the taking of a deposition in another action between plaintiffs and Nihell as owner wherein he stated that when he entered into the contract with plaintiffs he did so believing "the property was clear". When pressed for an explanation as to why he had entered into a contract of purchase with plaintiffs when his testimony here was to the effect that the prior contract under which defendant claims was still in good standing, he replied "I can't answer now, because I don't know", adding that "whatever I testified to in the examination [deposition] was what my mind was at that time". He also stated that he could not "remember" whether he kept the defendant's contract alive by granting an extension of time for performance. In attempted explanation of his express representation in plaintiffs' contract that the contract of defendant was then "in default" and that "written notice of such default" had been given, he declared that he had not read that part of plaintiffs' contract and that if he had he "didn't understand it". Thereupon he testified that he thought defendant's contract "was in effect" but he was unable to explain why he had accepted payments from both sides to this litigation under contracts that were necessarily antagonistic, one to the other.

Sufficient has been said to indicate the unsatisfactory and in many respects contradictory nature of the evidence addressed to the issue having to do with the owner Nihell's waiver, or lack of waiver, of the default that admittedly occurred in the defendant's performance under its contract. The state of the record is such that we cannot say that the trial court erred or abused its discretion in grant-

ing the plaintiffs' motion for a new trial on the ground of insufficiency of the evidence. The rules of law applicable to an appeal from such an order are well settled. A trial court in considering a motion for new trial is not bound by the rule of conflicting evidence. (*Weringer* v. *Rutledge*, 180 Cal. 566, 569 [182 Pac. 31].) When the motion is granted, as here, for insufficiency of the evidence, it is only in rare cases showing abuse of discretion that an appellate court will interfere because the trial judge must weigh all the evidence and determine the just conclusion to be drawn therefrom. (*Hanlon Dry Dock & Ship. Co.* v. *Southern Pac. Co.*, 92 Cal. App. 230, 232 [268 Pac. 385].) It cannot be held that a trial court has abused its discretion where there is a conflict in the evidence or where there is any evidence which would support a judgment in favor of the moving party. (*Wendling Lbr. Co.* v. *Glenwood Lbr. Co.*, 153 Cal. 411 [95 Pac. 1029]; *Roma Wine Co.* v. *Hardware Mutual Fire Ins. Co.*, 31 Cal. App. (2d) 455 [88 Pac. (2d) 260]; *Prout* v. *Perkins*, 21 Cal. App. (2d) 343 [69 Pac. (2d) 194]; *Taylor* v. *Rodriquez*, 10 Cal. App. (2d) 608 [52 Pac. (2d) 494]; *Peri* v. *Culley*, 119 Cal. App. 117 [6 Pac. (2d) 86].) In view of the witness Nihell's many inconsistent statements on the issue of waiver of the defendant's default under its contract, in view of his short and at times vacillating memory of many details in connection therewith and in view of his inability to satisfactorily explain his execution of a later contract of purchase with the plaintiffs and the collection of payments thereunder, we are satisfied that the trial court upon motion for new trial might well conclude, in the exercise of its discretion, that those portions of Nihell's testimony tending to indicate that he had excused and waived any default in the defendant's performance under its contract, were unworthy of credence. A new trial is warranted under such circumstances.

The order appealed from is affirmed.