[Civ. No. 15898. Second Dist., Div. Three. Dec. 18, 1947.]

MARIE JEAN HALEY et al., Appellants, v. BAY CITIES TRANSIT COMPANY (a Corporation), Respondent.

Birger Tinglof for Appellants.

Reginald I. Bauder and Robert E. Ford for Respondent.

WOOD, J.—Plaintiff Mrs. Haley sought damages for personal injuries sustained by her when she, a pedestrian, was struck by a motorbus owned and operated by the defendant. Plaintiff Mr. Haley, her husband, sought consequential damages. The jury rendered two verdicts—one for the wife and one for the husband, and judgments were entered thereon. Defendant made a motion for a new trial on the ground, among others, that the evidence was insufficient to justify "the verdict and judgment." The court granted the motion upon the ground that the evidence was insufficient to support "the verdict and the judgment."

Plaintiffs appeal from the order granting the motion for a new trial, and contend that the trial court abused its discretion in granting the motion.

 Plaintiffs' case was based on the alleged negligence of the bus driver in swerving suddenly into the curb in such a way that a part of the body of the bus extended over the curb and struck Mrs. Haley, who allegedly was standing on the sidewalk near the curb.

The accident occurred in Santa Monica on October 19, 1945, about 8:15 a. m., on Santa Monica Boulevard (which extends in an easterly and westerly direction), about 21 feet

east of the southeast corner of the intersection of Santa Monica Boulevard and Fourth Street. There is a marked crosswalk, 21 feet wide, extending across Santa Monica Boulevard at the east entrance of the intersection. The bus was 21 feet in length. The bottom of the floor of the bus and the bottom of the right front step were about 12 inches above the surface of the street, and the right front corner of the bus extended about 10 inches beyond the right side of the right front tire. The south curb of Santa Monica Boulevard extended 6 inches above the surface of the street.

Plaintiff Mrs. Haley testified that on the day of the accident she had alighted from a bus (not the one here involved) at the east side of Fourth Street, a few feet south of said intersection; that she then walked on the east sidewalk of Fourth Street to the south curb of Santa Monica Boulevard, and stopped there at a point on the curb approximately even with the east white line of the pedestrian crosswalk, which is on the east side of the intersection; that she had intended to cross to the north side of Santa Monica Boulevard to wait for another bus which would take her in a westerly direction; that she was standing on the south curb 2 or 3 inches from the edge of it and no part of her body extended beyond that curb; that she had a bundle, containing a dress and pocketbook, under her arm; that she looked for traffic on Santa Monica Boulevard; that she saw the bus, which is here involved, to her left in the middle of the intersection, traveling about 20 miles an hour in an easterly direction on Santa Monica Boulevard about 7 or 8 feet north of the south curb line; that she watched the bus as it came toward her, and it was traveling faster as it approached her than it was traveling when she first saw it; that when it was 10 or 15 feet from her, it "swung in all of a sudden" toward the curb where she was standing and she "felt a swish," and the front part of the bus struck her on her left shoulder and arm; that the bus carried her into the street and "knocked" her unconscious.

A witness, called by the plaintiffs, testified that prior to the accident she was standing on the south curb of Santa Monica Boulevard at a point about the middle of said pedestrian crosswalk (that is about 11 feet west of the place where Mrs. Haley was standing); that she (witness) had intended to cross to the north side of Santa Monica Boulevard and then walk easterly to her place of business on Fifth Street;

that as she stood on the curb she noticed Mrs. Haley, who was standing on the curb at a point about 11 feet east of the witness; that the witness looked for traffic on Santa Monica Boulevard and saw the bus, which is here involved, crossing Fourth Street in an easterly direction and about 10 feet north of the south curb line of Santa Monica Boulevard; that when the hood of the bus was passing the witness the bus swerved toward the curb and went faster; that the bus came so close to the witness and at such speed it frightened her; that the front end of the bus came within 6 inches or 1 foot of the curb at the point where the witness was standing; that she could hear the tires scrape against the curb where Mrs. Haley was standing, and as that happened she saw Mrs. Haley standing on the curb, and then Mrs. Haley seemed to double over and be carried along with the bus; that Mrs. Haley's leg went under the right rear wheel of the bus; and that Mrs. Haley did not step into the street.

The bus driver testified that as he crossed the intersection of Fourth Street and Santa Monica Boulevard he saw pedestrians on the sidewalk at the southeast corner; that, among them, there were two ladies standing toward the edge of the south curb on Santa Monica Boulevard, one of whom was Mrs. Haley, who was looking toward the east; that she did not turn her head and look toward the witness at any time; that he could see her plainly, and he watched her practically all of the time from the time he first saw her, and she did not move or make any attempt to go into the street; that the bus was traveling about 20 miles an hour and was 6 to 8 feet north of the curb; that it was an "old pusher type" bus, and not used on "a regular run"; that he did not know whether he angled toward the curb, but he was then in the process of reducing his speed to make a stop near the "bus stop", which was between Fourth and Fifth Streets on Santa Monica Boulevard (the bus stop was about 75 feet east of the place where Mrs. Haley had been standing); that the first time he knew anything had happened was when he heard a thud on the side of the bus, toward the right rear of it; that he already had his foot on the brake and was making the stop, and he then stopped as quickly as he could; that he found the plaintiff on her knees in the street at the right rear corner of the bus with her right hand up on the bumper; and that at no time, from the time he crossed Fourth Street until the bus came to a stop, did any part of it

touch the curb. He also testified that he started angling toward the curb when he was about 30 feet west of the east entrance to the intersection; and that he stopped the bus instantly after the accident—within approximately 3 feet.

A police officer, called by defendant, testified that he went to the scene of the accident about 8:15 a. m. in response to a call; that he made measurements of the distance between the right rear corner of the bus and the south curb on Santa Monica Boulevard; that the extreme right tip of the rear bumper was 3 feet from the curb and 6 feet east of the east white line of the crosswalk; and he "estimated" that the nearest portion of the right front of the bus was approximately 18 inches from the curb.

A witness, called by defendant, testified that he had made certain tests with the bus to determine the "overhang [over the curb] of the bus" when placed at different angles with relation to the curb, and he stated his computations as to how far parts of the bus extended over the curb when the bus was placed in certain positions; that when the right front and right rear tires were parallel with and against the curb, the body of the bus, at a point 4½ feet above the sidewalk, extended 12 inches over the curb; that when the bus was at the curb at an angle of 5 degrees, the body of the bus, at a point about 2½ feet above the sidewalk, extended about 2 inches over the curb, and when the bus was at an angle of 20 degrees, the body at that point extended 6 inches over the curb.

The parties stipulated that the jury might visit the scene of the accident, and that the bus, which was involved herein, might be placed at various angles and positions at the scene in the presence of the jury.

After the parties had rested, and before the instructions were given, the court made an order, pursuant to the stipulation, that the jury visit the scene of the accident. Thereupon, the jury, counsel for both parties, reporter, and bailiff, went to the scene of the accident, and there the bus was placed assertedly in various positions which, according to the evidence, it had been in at the time of the accident, and assertedly it was driven along the same route and was stopped at the same place and in the same position as, according to the evidence, it had been driven and stopped at the time of the accident. The judge did not go to the scene of the accident.

The next morning the court granted defendant's request

to reopen the case to call another witness. That witness, who was a transcriber for the shorthand reporter in this case, testified that she had seen the accident from an east window in her office (on the 12th floor of a building on the north side of Santa Monica Boulevard and about 1½ blocks west of the place where the accident occurred—which office is on the same floor of the same building where the courtroom is located); that she saw plaintiff's body come in contact with the bus, and at that time plaintiff was standing in the street; that the witness saw the plaintiff put her right foot into the street and transfer her weight onto her right foot; that as the bus passed by, her coat "sort of blew" out and plaintiff "sort of" fell under the back of the bus; that no part of the bus came in contact with the curb; that when Mrs. Haley came into contact with the bus, the right front wheel of the bus was approximately 10 inches from the curb, and the right rear wheel was approximately 3 feet from the curb.

Thereafter, the court granted plaintiffs' request that the jury be permitted to view the scene of the accident from the window from which the last witness said she saw the accident. The jury then went to the office of that witness, and the attorney for defendant went to the scene of the accident and stood at the point where plaintiff had testified she was standing when she was struck by the bus. While the attorney stood in that position, the bus here involved was driven and stopped on two occasions at the scene of the accident, assertedly in the same manner in which, according to the testimony of the bus driver, it was driven and stopped at the time of the accident. The jury viewed this demonstration from that window, but the trial judge was not present.

Appellants argue that since the trial judge was not present when the jury viewed the above-mentioned demonstrations, at the scene of the accident and from said office window, he abused his discretion in granting the motion for a new trial, in that he granted the motion without any knowledge or consideration of the demonstrative and autoptic facts.

The trial judge should have been at the scene of the accident with the jury and should have viewed with the jury the demonstration that was made there, and he should have been present with the jury in the said office and should have viewed from there the second demonstration that was made at the scene of the accident. The appellants, however, made

no objection to the absence of the trial judge when the demonstrations were made. The appellants do not contend that the trial judge's failure to observe the demonstrations with the jury constituted irregularity in the trial, but assert that the result of such failure was that the trial judge did not have the benefit of all the evidence or any of the most important evidence and was not in the same position the jury was in to consider and weigh the evidence, and therefore, that the granting of the motion for a new trial under such circumstances was an abuse of discretion.

The trial judge heard all the testimony and observed the witnesses. He also observed the map and the several photographs received in evidence and used by the witnesses while testifying. The photographs showed the bus, curb, street, crosswalk, bus stop, and the building from which the jury viewed the second demonstration. It thus appears that even though the trial judge did not view the demonstrations, which purported to be in accordance with the testimony of Mrs. Haley and her witness, all the other evidence was before him and he was in a position, aided by the map and photographs, to weigh and consider the possibility and probability of the bus being driven as stated by Mrs. Haley and her witness.

As above stated, the theory of appellants' case was that a part of the bus extended over the curb and struck Mrs. Haley. The trial judge said, as shown by his written opinion, that the uncontradicted evidence as to the place where the bus stopped after the accident "is all important and rather completely determines what actually occurred." That evidence was that when the bus came to rest the right rear of it was 6 feet easterly of and 3 feet northerly of the point on the curb where Mrs. Haley claims she was standing when she was struck, and that the right front end of it was 18 inches from the curb. The judge also said, "I do not think the bus could get into the position where it stopped and enroute project over the curb at all. The physical facts then alone call for a new trial." Even if it be assumed that the demonstration which purported to be in accordance with the testimony of Mrs. Haley and her witness was actually in accordance with such testimony and therefore refuted the judge's opinion that the bus could not have been operated as stated by them, the fact that such a demonstration could be made does not, of course, establish that the bus was in fact so operated at the time of the accident. As to the prob-

ability of the bus having been operated as Mrs. Haley and her witness stated, the trial judge said in his opinion that "Whatever the path of the bus may have been, I am convinced that at no time was any portion of the bus body over the curbline." Although the demonstration may have indicated that the judge erred in concluding that the bus could not be operated as stated by Mrs. Haley and her witness, it appears further from his opinion that he also concluded, irrespective of whether it could be demonstrated, that the bus could be driven as Mrs. Haley and her witness stated, that no part of the bus did, in fact, extend over the curb when the accident occurred.

"The granting of a new trial on the ground of insufficiency of the evidence will not be disturbed except on a manifest and unmistakable abuse of discretion by the trial court." (*Imperial-Yuma etc. Credit Assn.* v. *Shields,* 74 Cal.App.2d 932, 935 [169 P.2d 671].) "[W]here there is a substantial conflict in the evidence upon disputed issues which are material to the determination of the question of liability, the trial court may exercise its powers to set aside the verdict of a jury and order a new trial; and that under such circumstances its order will not be disturbed on appeal." (*Bayley* v. *Souza,* 55 Cal.App.2d 776, 778 [131 P.2d 584].) "When the motion is granted, as here, for insufficiency of evidence, it is only in rare cases showing an abuse of discretion that an appellate court will interfere because the trial judge must weigh all the evidence and determine the just conclusion to be drawn therefrom. . . . [Citing case.] It cannot be held that a trial court has abused its discretion where there is a conflict in the evidence or where there is any evidence which would support a judgment in favor of the moving party. . . . [Citing cases.]" (*Hames* v. *Rust,* 14 Cal.2d 119, 124 [92 P.2d 1010].)

In the present case there were substantial conflicts in the evidence as follows: (1) as to where Mrs. Haley was standing—whether she was on the sidewalk or whether she had stepped into the street; (2) as to the route or path the bus traveled—whether or not the tire scraped the curb or was near it; (3) as to which way Mrs. Haley was looking—whether she was looking toward the bus or away from it; (4) as to whether the speed of the bus was being increased or decreased just before the impact; (5) as to whether Mrs. Haley was struck by the front or rear of the bus; and (6)

as to how far the bus traveled after the impact—whether approximately 3 feet or 27 feet (the length of the bus plus 6 feet).

The conflicts in the evidence herein were such that a verdict for the moving party would have been supported by the evidence. The trial court did not abuse its discretion in granting the motion for a new trial.

The order granting the motion for a new trial is affirmed.

Shinn, Acting P. J., and Vallée, J. pro tem., concurred.