[Civ. No. 21545. Second Dist., Div. Two. May 21, 1956.]

CHRISTOPHER L. EDLER, a Minor, etc., Respondent, v. SEPULVEDA PARK APARTMENTS (a Corporation), Appellant.

Lee A. Solomon for Appellant.

Seymour R. Winston and Stan Flinkman for Respondent.

ASHBURN, J.—This is a personal injury action brought by a boy who was about 3 years old at the time of the accident. A jury rendered a verdict for defendant which appeals from an order granting plaintiff a new trial upon the expressed ground of insufficiency of the evidence to sustain the verdict.

Upon motion for new trial it is the function of the trial judge to make an independent appraisal of the evidence, including all permissible inferences, and to exercise a sound judicial discretion in determining whether the verdict effects a miscarriage of justice, and a reviewing court cannot disturb the order unless an abuse of discretion clearly appears.

■ All presumptions are in favor of the order and it will be affirmed if sustainable on any ground. ■ "The trial court in considering a motion for new trial is not bound by a conflict in the evidence, and has not abused its discretion when there is any evidence which would support a judgment in favor of the moving party. (*Estate of Green*, 25 Cal.2d 535, 542 [154 P.2d 692]; *Hames* v. *Rust*, 14 Cal.2d 119, 124 [92 P.2d 1010].) ■ The only conflict may be the opposing inferences deducible from uncontradicted probative facts. In such case the trial court may draw inferences opposed to those accepted by the jury, and may thus resolve the conflicting inferences in favor of the moving party, for 'It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court.' " (*Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, 358, 359 [170 P.2d 465].) We must, for present purposes, accept as established all evidence and all reasonable inferences favorable to plaintiff's cause. The following discussion proceeds upon that basis.

■ Defendant owned and operated a rental project of some 60 units which were laid out in courts, each building having front and back yards. Plaintiff's parents were tenants in one of the apartments. The yards were equipped with sprinkler systems, the sprinkler heads being approximately flush with the lawn and scattered at intervals throughout the grass. This was true of the lawn in front of each of the apartments. These lawns were 50 by 100 to 125 feet in dimensions and were separated by ordinary cement walks. The accident happened on February 24, 1953. On that morning plaintiff's grandfather, Warren Lincoln, and a neighbor, Mrs. Kryske, saw defendant's gardeners cutting the grass and earth from around the sprinkler heads in front of the Edler residence. They made a hole around each, which was about 6 inches in diameter and 3 inches in depth. This hole extended beyond the sprinkler head to a width of about 2 inches. Though it was customary for a workman to follow with a wheelbarrow of sand the one who reamed out the hole and to fill the hole with sand, it is a fair inference that that did not happen with respect to the hole involved in the accident. When Mr. Lincoln and Mrs. Kryske looked at it after that occurrence it was still 6 inches in diameter and 3 inches in depth. The practice of filling the holes, as explained by Joe Mesa, defendant's head gardener, was an

effort to keep the children away because of the danger of the holes. Children were accustomed to use these front lawns for play or any other adventure that might appeal to them. This they did every day. The fact was well known to defendant and its agents and the lawns were thus used with their permission.

In the afternoon of February 24th plaintiff's grandparents took him to market. Upon their return they were busy unloading the automobile when the grandmother heard plaintiff scream. She started toward him and her husband then heard and saw the plaintiff. He was lying on his back with his feet close to the sprinkler head, not quite touching it, and no one was near him. He had received a spiral fracture of the femur described by the specialist as a twisting injury from a fall with the leg in a twisted position. Appellant argues that the evidence does not warrant a finding of negligence or, assuming negligence, that it was the proximate cause of plaintiff's injury.

As to negligence, the above recital of facts shows inferentially a failure to fill the hole around the particular sprinkler head, a precaution that was considered to be necessary to the safety of children. Moreover, these were Moody sprinklers. Mr. Wallace F. Hammer, who specializes in the installation of that particular type of sprinkler, testified that if the sprinkler head for any reason becomes lower than the lawn the remedy is to install a longer nipple and thus raise it as desired. Also, that a hole dug around the head fills with water and if the head is flush with the earth there is no purpose in making a hole around it. Al Jennings, gardener for the City of Santa Monica for over 12 years, testified to long familiarity with Moody sprinklers and further said he had not found it necessary in those years of experience to cut holes around the Moody heads and that he had never done so. It appears therefore that an inference of negligence could be drawn from the making of the holes around the sprinkler heads in an area frequented by young children with the knowledge and consent of defendant. Also from the fact that the particular hole had not been filled in the manner required by ordinary care.

Appellant argues further that only through speculation and conjecture can the conclusion be reached that the injury was proximately caused by the sprinkler head or the hole around it. This was a small child, 3 years old, with a small foot which would easily go into the hole and cause a twist-

ing fall. That is the type he suffered; after he had fallen he was unable to get up and his feet were almost touching the sprinkler head; there was no one near him. The inference that his fall was caused by the hole and sprinkler head is a reasonable one which the trial judge or the jury could well draw. If it involves any degree of speculation it is only that minimal amount which is inherent in the ordinary process of drawing inferences. (See *Gilbert* v. *Pessin Grocery Co.,* 132 Cal.App.2d 212, 226 [282 P.2d 148]; *Miller* v. *Southern Pac. Co.,* 117 Cal.App.2d 492, 507 [256 P.2d 603]; *Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 424 [218 P.2d 17]; *Rovegno* v. *San Jose K. of C. Hall Assn.,* 108 Cal.App. 591, 595-597 [291 P. 848]; *Lindsey* v. *DeVaux,* 50 Cal.App.2d 445, 454 [123 P.2d 144].) There is sound basis in this record for an inference that defendant's negligence was the proximate cause of the accident.

Appellant's counsel also argue that there can be no recovery because defendant owed no duty to exercise care toward plaintiff with respect to the sprinklers. This brings forth an argument by counsel for both sides as to what plaintiff's status was,—whether a tenant, invitee, licensee or trespasser. The argument is misplaced. ■ If it were found that plaintiff, a small infant, was a mere trespasser in a place belonging to defendant in which his presence was normally to be expected by defendant, then it owed him a duty of reasonable care.

In *Kading* v. *Willis,* 135 Cal.App.2d 82 [286 P.2d 861], which involved an injury to a 5½-year-old boy when upon or near a delivery truck, it was held reversible error to instruct the jury: " 'If plaintiff had gotten upon the truck of the defendant without being expressly or impliedly invited so to do, and defendant's driver was unaware of his presence, then plaintiff was a trespasser and defendant owed no duty to plaintiff except to refrain from intentional harm or from willful reckless or wanton injury. There is no liability for mere failure to exercise ordinary care under such circumstances. . . .' " (P. 92.)

*Copfer* v. *Golden,* 135 Cal.App.2d 623, 627 [288 P.2d 90]: "Thus one is negligent in maintaining an agency which he knows or reasonably should know to be dangerous to children of tender years at a place where he knows or reasonably should know such children are likely to resort or to which they are likely to be attracted by the agency unless he exercises reasonable care to guard them against danger which

their youth and ignorance prevent them from appreciating. If, to the knowledge of the owner, children of tender years habitually come on his property where a dangerous condition exists to which they are exposed, the duty to exercise reasonable care for their safety arises not because of an implied invitation but because of the owner's knowledge of unconscious exposure to danger which the children do not realize. [Citing cases.] Children of tender years have no foresight and scarcely any apprehensiveness of danger, a circumstance which those owning instrumentalities potential for harm must bear in mind; for it is every individual's duty to use toward others such due care as the situation then and there requires. (Civ. Code, § 1714.) 'The known characteristics of children, including their childish propensities to intermeddle, must be taken into consideration in determining whether ordinary care for the safety of a child has been exercised under particular circumstances.' " The court also said at page 628: "The Restatement says: 'A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.' (Rest., Torts, § 339. See 65 C.J.S. 454, § 28.) The rule in California is substantially as stated in the Restatement." (To the same effect see *Staggs* v. *Atchison, T. & S. F. Ry. Co.*, 135 Cal.App.2d 492, 500 [287 P.2d 817]; *Frederiksen* v. *Costner*, 99 Cal.App.2d 453, 456 [221 P.2d 1008]; *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 36 [286 P.2d 21].)

The order granting a new trial is affirmed.

Moore, P. J., and Fox, J., concurred.