[Civ. No. 5780.   Fourth Dist.   Jan. 26, 1959.]

FRED McCALL et al., Respondents, v. RAYMOND E. SCHNACKENBERG et al., Appellants.

Harold M. Fagin for Appellants.

Hennigan, Ryneal & Nixen and J. David Hennigan for Respondents.

MUSSELL, J.—This action was commenced in the Municipal Court of Riverside Judicial District. McCall and Noblitt, plaintiffs therein, sought judgment against defendant Schnackenberg and his wife for fertilizer sold and delivered to them. Defendants filed a general denial and cross-complaint, and alleged that in March, 1953, plaintiffs orally agreed to furnish all the fertilizer that defendants would need to fertilize approximately 25 acres of potatoes and to assist in the supervision and in the planting and raising of said crop; that they failed to deliver the fertilizer as agreed and that by reason of the delay of plaintiffs in delivering said fertilizer defendants' potato crop was damaged in the sum of $5,000. The cause was transferred to the superior court and a jury trial was had therein, resulting in a verdict in favor of the defendants and cross-complainants and against McCall and Noblitt for the sum of $3,000. On August 1, 1957, the trial court granted a new trial on motion of plaintiffs "on the ground of insufficiency of the evidence to justify the verdict and for excessive damages appearing to have been given under the influence of passion or prejudice." Defendant and cross-complainant Schnackenberg and his wife appealed from the order granting the new trial.

A second amended cross-complaint was filed by the Schnackenbergs in which they alleged that but for the delay of plaintiffs in failing to furnish fertilizer as agreed, 10,000 sacks of Number 1 and Number 2 potatoes would have been produced by the cross-complainants in place of a similar number of poorer quality potatoes; that the demands in the cross-complaint all arise out of the sale of fertilizer to cross-complainants during 1953; that cross-defendants falsely represented that they had been paid for only 227 bags of fertilizer when in fact they had been paid for 260 sacks; that cross-defendants stated that 1,475 sacks of culls owned by cross-complainants were worthless and had no value when in fact they did have a value of approximately $147.50; that cross-defendants fraudulently misgraded 1,020 sacks of potatoes.

The complaint herein involved facts which are not disputed. In September, 1953, at the request of appellants, respondents delivered to appellants 800 100-pound sacks of ammonium sulfate to be paid for at a price of $61.25 per ton, if paid within 10 days of invoice, otherwise at $65 per ton, plus 50 additional sacks of sulfate at an agreed price of $65 per ton. Eighteen hundred dollars was paid in 10 days of

invoice, leaving a balance due of $851.50. No finding of the jury was made as to the issues in the complaint.

As to the cross-complaint the evidence shows that in the spring of 1953 Schnackenberg informed respondent McCall that he wanted to raise potatoes on his land. McCall referred him to persons who might assist him in financing the crop and Schnackenberg entered into a contract and crop mortgage with Alfred W. Chase and Sam Plone Potatoes, Inc. to advance the necessary funds. Chase paid to Schnackenberg a sum to cover 260 sacks of fertilizer. Some fertilizer was supplied and used in the planting of the potatoes and it was agreed that Schnackenberg would take delivery of the balance later. A total of either 167 or 227 sacks was delivered to cross-complainant Schnackenberg and he claims that the failure to deliver the balance of the 260 sacks amounted to actionable fraud. However, cross-complainants' credit on 260 sacks was applied to the purchase of insecticide which was obtained and sprayed on the potatoes. As the time for harvest approached the weather was hot and the potato market was low. Schnackenberg refused to release Chase from his obligation to harvest the crop and pursuant to his contract and mortgage Chase had the potatoes harvested, processed and graded by Sam Plone Potatoes, Inc. The potatoes were graded under the supervision of the Riverside Agricultural Inspector and some 14,750 pounds were rejected as culls. The potatoes were shipped to Los Angeles and there some of the Number 2 potatoes were rejected as having an unduly large number of poor quality potatoes resulting from grass roots, insect damage, and other items. The net result to Schnackenberg was that his crop resulted in a loss to him. Other growers in the area likewise suffered a crop loss in that year and area. There was no testimony as to what profits would have been realized by Schnackenberg had he obtained delivery of the 260 sacks of fertilizer when he first requested it.

The trial court in its opinion and order granting a new trial stated that he could find no evidence of sufficient probative value to justify the verdict for defendants and cross-complainants on their cause of action for alleged breach of contract to deliver fertilizer and to supervise the growing of the spring potato crop; that there was insufficient evidence to show that these potatoes were damaged by any failure of plaintiffs to deliver the fertilizer when requested; that Noblitt made none of the alleged representations and was not guilty of fraud; that he had searched the evidence in vain for anything that might justify a verdict of $3,000 against McCall

and could find none; that the evidence clearly indicated that defendants and cross-complainants were indebted to plaintiffs in the sum of $851.50, which sum the jury should have deducted from any damages awarded.

The state of the record herein is such that we cannot say that the trial court erred or abused its discretion in granting the motion for a new trial on the ground of insufficiency of the evidence. The rules applicable to an appeal from such an order are well settled. ■ The trial court in considering a motion for new trial is not bound by the rule of conflicting evidence. ■ When the motion is granted, as here, for insufficiency of the evidence, it is only in rare cases showing abuse of discretion that an appellate court will interfere because the trial judge must weigh all the evidence and determine the just conclusion to be drawn therefrom. (*Estate of Green*, 25 Cal.2d 535, 542 [154 P.2d 692].) ■ In *Van Ostrum* v. *State*, 148 Cal.App.2d 1, 5 [306 P.2d 44], the court said:

"Concerning an order granting the motion upon the ground of excessive damages, it is said in *Strosk* v. *Howard Terminal Co.*, 129 Cal.App.2d 797, 802 [277 P.2d 828]: " ' "Whatever may be the rule which should govern the trial judge, it is certain that when his action in granting a new trial on the ground of excessive damages, or requiring a reduction of the amount as the condition of denying one, comes to be reviewed on appeal, his order will not be reversed unless it plainly appears that he abused his discretion; and the cases teach that when there is material conflict of evidence regarding the extent of damage the imputation of such abuse is repelled, the same as if the ground of the order were insufficiency of the evidence to justify the verdict." (*Doolin* v. *Omnibus Cable Co.*, 125 Cal. 141, 144-145 [57 P. 774] . . .' "

■ In *Edler* v. *Sepulveda Park Apts.*, 141 Cal.App.2d 675, 676-677 [297 P.2d 508], the court said:

"Upon motion for new trial it is the function of the trial judge to make an independent appraisal of the evidence, including all permissible inferences, and to exercise a sound judicial discretion in determining whether the verdict effects a miscarriage of justice, and a reviewing court cannot disturb the order unless an abuse of discretion clearly appears. ■ All presumptions are in favor of the order and it will be affirmed if sustainable on any ground."

The order granting a new trial is affirmed.

Griffin, P. J., and Shepard, J., concurred.