[Civ. No. 9408.   Third Dist.   Dec. 17, 1958.]

KATHLEEN ANN GOFF, a Minor, etc., et al., Respondents,
v. DOCTORS GENERAL HOSPITAL OF SAN JOSE
(a Corporation) et al., Appellants.

Zeff, Halley & Price for Appellants.

Hancock & Lundgren for Respondents.

SCHOTTKY, J.—This is an appeal from an order granting a motion for a new trial as to defendants Doctors General Hospital of San Jose, doing business as Buchanan Hospital, Elma Kiese, and Mary Lynne Lee, sued as L. Lee, in an action brought to recover for the wrongful death of Bette Jo Goff, the wife of plaintiff Charles T. Goff, and the mother of plaintiffs Charles T. Goff, Jr., Kathleen Ann Goff and Bette Jo Goff. Defendant Vernon Ashley has not appealed from the judgment entered against him.

On October 26, 1955, Bette Jo Goff was admitted to Buchanan Hospital at the request of her physician, Vernon Ashley, for the purpose of having a child. Under instructions of her physician, Mrs. Goff was administered pituitrin, a drug used to induce labor. About 7 p. m. Mrs. Goff was taken to

the delivery room where her child was born. Prior to the birth of the child Dr. Ashley made an incision just to the left of the 12 o'clock position of the cervix to relieve the constrictive band of muscle. This incision was not sutured, but pelvic packs were inserted to control the bleeding. Mrs. Goff was then returned to her room. Nurse Lee, who assisted during the birth of the child, told the doctor on three different occasions, the last about 9:30 p. m., that, in her opinion, the patient was bleeding too much. She testified that Dr. Ashley told her that the condition, as described, was normal. She also testified that Dr. Ashley instructed her on a testing method by which the rate of loss of blood could be measured. The nurse was instructed to time the period it took for the perineal pads to become soaked. At 9:45 she checked the patient and some blood was found on the pads, though they were in fair condition; at 10:15 the nurse checked the pads again and found that they were approaching the saturation point; at 10:30 the pads were found to be soaked with blood and the nurse changed them. During this period the nurse did not take the blood pressure, temperature, pulse or respiration of the decedent. She did not call the physician because, in her opinion, he would not have come anyhow. She also testified that she did not call him because the timing test had not been completed. The doctor's order sheet stated that he was to be called if the post partum flow was greater than normal. At 10:15 she thought an emergency existed. At 10:30 she thought the patient's condition was pretty serious. At 11 p. m. Miss Lee was relieved by Mrs. Kiese. She was advised by Miss Lee that Mrs. Goff was bleeding too much, and that Miss Lee was horrified by Dr. Ashley's treatment of the patient. About 11:10 Mrs. Kiese observed Mrs. Goff. The patient appeared to be going into shock. The nurse could not locate the patient's pulse, and she was cold and clammy. She called Dr. Ashley about 11:15, and he arrived at the hospital about 11:25. Mrs. Goff was taken to the delivery room where oxygen and adrenalin were administered. There was an attempt to give the patient a blood transfusion, but the doctor was unable to find a vein in which to insert a needle. Mrs. Goff died of a hemmorrhage from a laceration of the cervix.

Dr. John F. Blinn, Jr., a physician and surgeon, with offices in Stockton, was found by the court to be qualified to testify as to the standard of care of doctors and nurses in the locality. Dr. Blinn testified that defendant Ashley's treatment of Mrs. Goff was not one which is ordinarily employed by

physicians in good standing in the locality. The incision was not proper in technique and should have been sutured. He also did not meet the standard by not observing the laceration, and when he could not find the vein he should have cut down.

Dr. Blinn further testified that defendant Lee's care was not commensurate with the skill ordinarily used by nurses in good standing in the locality in that she should have observed the blood pressure, temperature, pulse and respiration of Mrs. Goff, and that such observations would have indicated Mrs. Goff's perilous condition; that she should not have acted on her own opinion of the doctor's attitude and qualification, but should have called him and should have notified her supervisor.

Dr. Blinn also testified that time was of the essence and that if proper medical care had been summoned sooner the chances of saving Mrs. Goff's life would have been greater.

The motion for a new trial was granted upon the ground of insufficiency of the evidence to sustain the verdict in favor of appellants. Appellants contend that there is no substantial evidence to support a verdict contrary to the one that the jury rendered, and that, therefore, the order granting the motion for a new trial was erroneous.

The rules applicable to an appeal from an order of the trial court granting a motion for a new trial on the ground of the insufficiency of the evidence are well settled and are succinctly expressed in the case of *Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, at page 358 [170 P.2d 465], as follows:

". . . [T]he granting of a motion for a new trial rests within the discretion of the trial judge to such an extent that an appellate court will not interfere unless an abuse of discretion clearly appears. All presumptions are in favor of the order and it will be affirmed if it is sustainable on any ground. (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338], and cases cited.) The trial court in considering a motion for new trial is not bound by a conflict in the evidence, and has not abused its discretion when there is any evidence which would support a judgment in favor of the moving party. (*Estate of Green*, 25 Cal.2d 535, 542 [154 P.2d 692]; *Hames* v. *Rust*, 14 Cal.2d 119, 124 [92 P.2d 1010].) The only conflict may be the opposing inferences deducible from uncontradicted probative facts. In such case the trial court may draw inferences opposed to those accepted by the jury, and may thus resolve the conflicting inferences in favor of the moving party, for 'It is only where it can be

318

said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court.' (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689] ; *Malloway* v. *Hughes*, 125 Cal.App. 573, 580 [13 P.2d 1062].)'' In the light of these well-settled rules, we have concluded that the order granting a new trial in the instant case must be affirmed.

Any liability of the appellant hospital must necessarily be predicated on the doctrine of *respondeat superior* so we must determine whether there is any evidence in the record which would support a finding that either of the nurses was negligent, since Dr. Ashley was not an employee of the hospital. ■ ''The extent and character of the care that a hospital owes its patients depends on the circumstances of each particular case. A private hospital owes its patients the duty of protection, and must exercise such reasonable care toward a patient as his known condition may require. ■ The measure of duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking. ■ A hospital is liable for want of ordinary care, whether from incompetency of a nurse or failure in duty by a fully qualified nurse . . .'' (*Wood* v. *Samaritan Institution, Inc.*, 26 Cal.2d 847, 851 [161 P.2d 556].) ■ Appellant Lee knew that Mrs. Goff was bleeding. She did not take her pulse, blood pressure, temperature or respiration. She did not call Dr. Ashley even at 10 :30 p. m. when she was aware that the bleeding was more than normal post partum flow, despite the fact that the doctor's order sheet stated he was to be called if there was more than the normal post partum flow.

Dr. Blinn testified that proper nursing care required that the nurses who were employees of the hospital should have reported the facts and circumstances to a superior in the hospital, with the end in view that prompt and adequate measures be taken to safeguard the life of Mrs. Goff. The following quotation from the memorandum opinion of the trial judge in granting the motion for a new trial is fully supported by the record :

''The evidence is clear that the two nurses realized the nature of the medical care that the doctor was administering to Mrs. Goff. The nurses knew that Mrs. Goff was in deadly peril and the nurses knew the cause and origin of that peril

and they knew who was to blame for that peril. The first nurse told the second nurse that she was 'horrified.' It is elementary that the knowledge received during the course of their employment as nurses is in legal effect binding upon their employer, the defendant Hospital.

. . . . . . . . . . . . .

"It is apparent from the evidence with particular reference to the time of 9 :00 P. M., and 10 :30 P. M., and 11 :00 P. M., that both nurses in the exercise of ordinary care could have taken action that would have guarded the safety of Mrs. Goff and that this nonfeasance contributed as a proximate cause to her death.

"Both nurses had enough time to have reported the facts and circumstances of Mrs. Goff's peril to a superior in the hospital corporation with the purpose that prompt and adequate measures be taken to safeguard the life of Mrs. Goff. In view of the testimony of Dr. Blinn there was enough time for those measures to have been effective."

We are satisfied that the evidence was sufficient to support a finding that the appellant nurses, Lee and Kiese, were negligent and that the trial court did not abuse its discretion in granting the motion for a new trial on the ground of the insufficiency of the evidence.

Appellants contend that Dr. Blinn's testimony should not have been received because he was not qualified to testify as to the standard of care prevailing in the hospitals of the same type or similar to the appellant hospital or as to the duties and functions of nurses employed therein. Dr. Blinn practices in Stockton, which is 14 miles from Lodi. He is on the staff of two hospitals in Stockton, as well as being a member of the staff of the infirmary of the College of Pacific. The staff of a hospital determines the policies that are to be followed by the hospital and the course of conduct to be followed by the hospital personnel. This latter includes the duties of nurses in post partum care. Dr. Blinn could not testify to the actual standard of care in Lodi. He did practice in a city 14 miles away. Both cities are in the same county, and medical men practicing in the two cities belong to the same county medical association. Certainly, as to the negligence of Dr. Ashley, Dr. Blinn's testimony would be competent. (See *Sinz* v. *Owens*, 33 Cal.2d 749 [205 P.2d 3, 8 A.L.R.2d 757].) We are convinced also that Dr. Blinn would be competent to testify as to the negligence of the nurses. Surely, a qualified

doctor would know what was standard procedure for nurses to follow. Hospitals are required to be licensed by the State of California and must conform to certain standards. Nurses who perform the duties assigned to appellant nurses in the instant case are required to be licensed registered nurses and are expected to practice their profession with due concern for the welfare of the patient. We are satisfied that Dr. Blinn, who is on the staff of two hospitals in the neighboring city of Stockton, was fully competent to testify as to the negligence of the appellant nurses.

Appellants also contend that if either of the appellant nurses was negligent her negligence was not a proximate cause of the death of Mrs. Goff. However, the question whether or not the negligence of the nurses was a proximate cause is one of fact. Conceding that Dr. Ashley was negligent, still if nurse Lee had called the doctor at 10:30 p. m., when she was aware the condition of the patient was critical, who can say that the same result would have occurred. The patient may not have been in shock. The doctor may have been able to insert a needle for a blood transfusion. The longer the delay, the more critical the condition of the patient became. Time was a most important factor. In the instant case a finding that the negligence of the nurse was a contributing cause of the death is supported by the record.

No other points raised require discussion.

The order granting a new trial is affirmed.

Van Dyke, P. J., and Peek, J., concurred.