ELIZABETH L. REES, M.D., Appellant, *v.* ANGELINE
L. RODERIQUES, Respondent.

No. 15355

June 26, 1985                                701 P.2d 1017

[Rehearing denied September 13, 1985]

*Eugene J. Wait, Jr.,* and *Don Springmeyer,* Reno, for Appellant.

*Echeverria, Osborne & Jenkins,* and *Steve Wenzel,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order granting a new trial in a medical malpractice suit.

Respondent Angeline Roderiques brought this action against appellant Dr. Rees, claiming that Dr. Rees was negligent in her medical treatment of Roderiques and, as a result, the lower portion of Roderiques' right leg was amputated. A jury trial was thereafter conducted. The testimony at trial established that on the morning of February 21, 1982, Roderiques suffered an attack of pain in her right leg. The leg ached continuously overnight. Roderiques went to Dr. Rees' office on the afternoon of February 22, 1982. When Roderiques arrived at the office, she was in severe pain and had difficulty walking. As she entered the office, the medical assistant observed that her walk was very exaggerated, her right foot dragged and turned in, and her lower right leg was swollen. Dr. Rees examined Roderiques and found many enlarged veins and some swelling in the right leg and foot. Dr. Rees also found pulsations in the foot. The foot was not discolored, but it was cold. Dr. Rees concluded that Roderiques was suffering from varicose veins, and she instructed Roderiques to wear an elastic stocking to support the veins and reduce the swelling. Dr. Rees did not make a definitive diagnosis that day, but scheduled another appointment for Roderiques two days later.

On March 5, 1982, Roderiques again went to Dr. Rees' office and was seen by the medical assistant, who observed that Roderiques' right foot was black with red streaks. The assistant immediately referred Roderiques to another doctor, and she was sent to

St. Mary's Hospital in Reno. The physical examination indicated that Roderiques was suffering from early gangrene in the right foot. The artery which delivered blood into the right leg was blocked, and surgery was performed to remove the clot in the leg. Roderiques' leg could not be saved and, subsequently, the right leg was amputated below the knee.

Upon the conclusion of the trial, the jury returned a verdict in favor of Dr. Rees. Roderiques subsequently moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court denied the motion for a judgment notwithstanding the verdict, but granted a new trial on the basis that the jury had misapplied and/or misunderstood the instructions of law dealing with the standard of care and proximate cause. Dr. Rees' appeal followed.

A new trial may be granted if there has been a "[m]anifest disregard by the jury of the instruction of the court." NRCP 59(a)(5). In Weaver Brothers, Ltd. v. Misskelley, 98 Nev. 232, 645 P.2d 438 (1982), we stated that "in determining the propriety of the granting of a new trial under NRCP 59(a)(5), the question is whether we are able to declare that, had the jurors properly applied the instruction of the court, it would have been impossible for them to reach the verdict which they reached." *Id.* at 234, 645 P.2d at 439; *see also* Groomes v. Fox, 96 Nev. 457, 611 P.2d 208 (1980); Eikelberger v. Tolotti, 94 Nev. 58, 574 P.2d 277 (1978).

Dr. Rees contends that it was not impossible for the jury to reach a verdict in her favor and thus the district court erroneously granted Roderiques' motion for new trial. Dr. Rees first argues that Roderiques failed to demonstrate that Dr. Rees' diagnosis and treatment on February 22, 1982, breached the standard of care applicable to a general practitioner. Specifically, Dr. Rees contends that Roderiques' expert medical witnesses, both vascular surgeons, did not establish the standard of care for a general practitioner. We disagree.

It is well-settled in Nevada that negligence may exist in the diagnosis, as well as the treatment, of patients; the degree of care required of a physician is the same in either case. Corn v. French, 71 Nev. 280, 289 P.2d 173 (1955). The standard of care to be applied in a medical malpractice case is to be established by the testimony of expert witnesses with knowledge of the prevailing standards. *See* Corn v. French, *supra.* There is no requirement that the expert medical witness be from the same speciality as the defendant; the issue is simply one of the witness' actual knowledge. *See e.g.*, Hersh v. Hendley, 626 S.W.2d 151 (Tex. Civ.App. 1981).

The testimony of Roderiques' expert medical witnesses established the appropriate standard of care for any physician, whether a specialist or a general practitioner, when faced with a seventy-five year old woman in Roderiques' condition. Their testimony described the proper extent and nature of the examination, referral and treatment which should have occurred on February 22, 1982. They both testified that Dr. Rees' advice and treatment on February 22, 1982, did not meet with the standard of care of a general practitioner and they agreed that Dr. Rees' one action, prescribing an elastic stocking, was exactly the wrong treatment.

[Headnote 5]

Dr. Rees testified that her diagnosis was based on her knowledge of the history and physical appearance of Roderiques' leg, but she presented no evidence to contradict the testimony of the other experts regarding the appropriate standard of care, nor did she give an opinion as to whether her conduct violated the standard of care.

Dr. Rees also contends that her conduct on February 22, 1982, was not the proximate cause of Roderiques' eventual loss of her lower leg. Based on one of the expert witness' testimony that the chances of muscle damage increased dramatically six to ten hours after Roderiques first felt the pain in her leg, Dr. Rees claims that by the time she saw Roderiques more than 24 hours later, the loss of the leg was inevitable. This contention is not supported by the evidence. The expert testimony established that if Roderiques had received proper treatment or a referral to a specialist on February 22, 1982, her leg would not have required amputation.

The only two expert witnesses at trial testified that Dr. Rees did not comply with the standard of care required of a general practitioner, and that the leg could have been salvaged if plaintiff had received proper care on February 22, 1982. We therefore conclude that if the jury had correctly applied the law, it would have been impossible for them to reach a verdict in favor of Dr. Rees. Accordingly, the trial court did not err in ordering a new trial based upon the jury's manifest disregard of the instructions.

The order granting a new trial is affirmed.

SPRINGER, C. J., MOWBRAY, GUNDERSON, STEFFEN, JJ., and ZENOFF, SR. J.,[1] concur.

---

[1]The Governor designated SENIOR JUSTICE DAVID ZENOFF to participate in this case. Nev: Const. art. 6, § 4.