Brenda JUSTICE and Hershel Justice, Appellants–Plaintiffs,

v.

CLARK MEMORIAL HOSPITAL, Appellee–Defendant.

No. 10A01–9905–CV–156.

Court of Appeals of Indiana.

Nov. 10, 1999.

---

John F. Dietrich, Scottsburg, Indiana, Attorney for Appellants.

Richard L. Mattox, Derrick H. Wilson, Mattox & Mattox, New Albany, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Brenda and Hershel Justice appeal a summary judgment in favor of Clark Memorial Hospital. We restate the issue raised as whether the Hospital is entitled to summary judgment where the Justices presented an affidavit from a physician stating that the Hospital breached the applicable standard of care, but where the physician, when deposed by the Hospital, testified that the injury suffered by Brenda Justice was more likely a complication than a breach of the standard of care.

We reverse.

### FACTS AND PROCEDURAL HISTORY

From February 24 to February 26, 1993, Brenda was at the Hospital for a surgical procedure. While there, she sustained a physical injury to her right hip region, purportedly caused by a Phenergan injection. Pursuant to the Indiana Medical Malpractice Act, Ind.Code §§ 34–18–1–1 to 34–18–18–1, the Justices filed with the Department of Insurance their Proposed Complaint against the Hospital and Dr. H. Wayne Mayhue.[1]

A medical review panel found by a unanimous vote that the evidence did not support the conclusion that the Hospital failed to meet the applicable standard of care. The Justices then filed a complaint against the Hospital in the Clark Circuit Court. The Hospital moved for summary judgment based on the finding of the medical review panel.

The Justices responded to the Hospital's motion for summary judgment with an affidavit from Dr. James A. Westervelt which stated:

> 5. Based upon my examination of Brenda Justice, and based upon my review of the medical records, it is my

1. The trial court granted Dr. Mayhue's motion for summary judgment and that judgment apparently has not been appealed.

opinion, within a reasonable degree of medical certainty, that the injury sustained by Brenda Justice in her right hip region was the result of an improperly administered intramuscular injection of Phenergan on February 24, 1993 at 7:30 p.m. while Brenda Justice was hospitalized at Clark Memorial Hospital.

6. It is my opinion, within a reasonable degree of medical certainty, that this injury would not have been sustained if the IM injection of Phenergan on February 24, 1993, would have been properly administered.

7. It is my opinion, within a reasonable degree of medical certainty, that Clark Memorial Hospital deviated from the appropriate standard of care as a result of the improperly administered intramuscular injection of Phenergan in this case.

(R. at 52.) The trial court denied the Hospital's motion for summary judgment.

The Hospital deposed Dr. Westervelt and renewed its motion for summary judgment based on Dr. Westervelt's testimony during the deposition. The trial court granted the Hospital's renewed motion for summary judgment, and this appeal ensued.

## DISCUSSION AND DECISION

There is no question that, as to the first motion for summary judgment, the Justices presented a genuine issue of material fact when they filed Dr. Westervelt's affidavit. The issue before us is whether, given Dr. Westervelt's subsequent deposition testimony, the Hospital has demonstrated that there is no longer a genuine issue of material fact.[2] We find it has not.

■ A party seeking summary judgment has a burden to establish that there is no genuine issue as to any material fact. Any doubt as to a fact or inference to be drawn therefrom is resolved in favor of the party opposing the motion for summary judgment. *Gaboury v. Ireland Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1313 (Ind. 1983). A fact is material if its resolution is decisive of either the action or a relevant secondary issue. *Id.* To be considered genuine under T.R. 56 a material issue must be established by sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the

2. The Hospital also argues that summary judgment in its favor should be affirmed because the Justices failed to respond to the Hospital's renewed motion within thirty days as required by Ind. Trial Rule 56(C) and failed to designate any evidence in response to that motion. We have held that a trial court may properly exclude from its consideration materials filed in response to a motion for summary judgment more than thirty days after the motion. *Cloverleaf Apts., Inc. v. Town of Eaton*, 641 N.E.2d 665, 668 (Ind.Ct.App. 1994). However, we decline to affirm the summary judgment for the Hospital on that basis where, as here, the Justices had already designated evidence in response to the Hospital's original motion.

The designation requirement of T.R. 56(C) is intended to aid the efficiency of summary judgment proceedings by ensuring that the parties and the trial and appellate courts are not required to search the record in an effort to discern whether an issue of material fact exists. *Nobles v. Cartwright*, 659 N.E.2d 1064, 1070 (Ind.Ct.App.1995). As long as a trial court is aware of the materials a party relies upon in opposition to a motion for

summary judgment, the designation requirement is met. *Mid State Bank v. 84 Lumber Co.*, 629 N.E.2d 909, 913 (Ind.Ct.App.1994). It thus would not further the purpose of the designation provision to require that a party in the position of the Justices continually redesignate its evidence in response to successive motions for summary judgment when it has already offered those materials to the trial court.

In *Nobles*, the trial court accepted some designated materials which the plaintiff had not filed in a timely manner. We found any error in accepting the materials to be harmless because "the late-filed designation simply repeats the allegations [plaintiff] first presented in her response brief, which she filed at the appropriate time.... Also, it is clear that the documents forming the appendix attached to the designation are merely copies of the ones [plaintiff] earlier referenced in her response brief." 659 N.E.2d at 1071. Because the Justices had already designated material to the trial court in response to the Hospital's first summary judgment motion, we find no error in their failure to re-designate the same material in response to the renewed motion.

parties' differing versions of the truth at trial. *Id.* Because Dr. Westervelt's deposition testimony does not directly contradict his affidavit which the Justices offered in response to the original summary judgment motion, there remain "differing versions of the truth" to be resolved at trial. For that reason, summary judgment for the Hospital was improper.

Dr. Westervelt testified as follows:

Q. In terms of actually giving an injection, that's a nursing call?

A. [Yes].

Q. A nursing standard of care issue?

A. [Yes].

Q. And were you aware of how the nurses were dispensing IM injections in 1993 at Clark Memorial Hospital, what the protocols were?

A. No, I don't.

Q. Have you ever testified about nursing standards of care before?

A. No.

Q. And you're aware that in this case the nurse is the person who is being charged with acting inappropriately or negligently?

A. I mean, I would only assume that because it's based on the assumption here that the medication was given subcutaneously rather than intramuscularly.

Q. And do you feel comfortable giving an opinion about a nursing standard of care about how this injection was given in 1993?

A. I feel comfortable saying that this injury is most likely related to a subcutaneous injection of the medicine.

Q. And in terms of how the medicine was administered itself, we don't know specifically how it was done?

A. That's correct.

Q. And—

A. I mean, there's no way.

(R. at 98–99.)

Q. Are there circumstances where when you are withdrawing the needle some of the Phenergan can leak out?

A. Absolutely that's possible.

Q. And in this case, if that happened, would that be considered a complication of the procedure versus negligence?

A. I would consider that—I would consider that a complication of an injection, that you could potentially infiltrate the subcutaneous tissue, sure.

Q. And it would be one thing if the nurse just for whatever reason purposefully injected it subcutaneously and another thing if by accident when it was withdrawn some of the Phenergan leaked out in the subcutaneous layer. Would you agree with that?

A. Yes, I would agree with that.

(R. at 99–100.)

Q. Doctor, at this point in time, with what you know or don't know about how the injection was given, can you say to a reasonable degree of medical probability that this was a complication versus a breach of a standard of care by the nurses at Clark Memorial Hospital?

A. My feeling would be that it is more along the lines of a complication of an administered injection.

Q. Okay. And on issues of causation, aside from the time element that we have discussed a lot, aside from the time element, a spider bite and a Phenergan reaction have the same general attributes?

A. [Yes].

. . . .

Q. And a pressure ulcer could present the same, but it would have little bit different characteristics?

A. I think it's less likely because of other factors.

(R. at 113–14.)

It is apparent that Dr. Westervelt's deposition testimony was equivocal as to his opinion whether the actions of the Hospital were a breach of the applicable standard of care and that the Hospital's questions cast some doubt as to the effect of Dr. Westervelt's expert testimony. However, Dr. Westervelt did not testify that he had

withdrawn his prior opinion that the Hospital had breached the standard of care.

The Hospital correctly notes that a party opposing summary judgment may not create an issue of fact merely by submitting an affidavit which contradicts the affiant's prior sworn testimony. *Shepard v. Porter,* 679 N.E.2d 1383, 1387–88 (Ind.Ct. App.1997), *reh'g denied.* However, Dr. Westervelt's statement cannot be fairly characterized as contradicting his prior testimony. In his deposition, Dr. Westervelt did not testify that the action of the Hospital was not a breach of the standard of care. Rather, he testified that the situation was "more along the lines of a complication." (R. at 113.) It is possible that with more questioning Dr. Westervelt might have completely retracted his opinion; however, the record before us reveals no such retraction.

We must, on summary judgment, resolve all doubt as to the inferences to be drawn from Dr. Westervelt's deposition testimony in favor of the Justices. As such, we find that the genuine issue of material fact established by the Justices on the Hospital's first motion for summary judgment survived the Doctor's subsequent deposition testimony because that testimony was not inconsistent with the opinion he expressed in his affidavit.

■ Finally, the Hospital argues that Dr. Westervelt is not qualified to give an opinion with respect to the standard of care of the Hospital, since he testified that he was not familiar with the nursing standard of care there. Two requirements must be met in order for a witness to qualify as an expert: (1) the subject matter must be distinctly related to some scientific field, business or profession beyond the knowledge of the average person and (2) the witness must have sufficient skill, knowledge or experience in that area so that the opinion will aid the trier of fact. *Taylor v. State,* 710 N.E.2d 921, 923 (Ind. 1999). The trial court's decision to admit or exclude evidence under this rule is reviewed on appeal only for an abuse of discretion. *Id.*

 Dr. Westervelt testified that the injection was inappropriately given subcutaneously rather than intramuscularly. (R. at 99.) This indicates his familiarity with the distinction between subcutaneous and intramuscular injections, and evidences his qualification to give his expert opinion on that question. We cannot say the trial court abused its discretion to the extent it took into account Dr. Westervelt's opinion that the injection was inappropriately administered.

We reverse the summary judgment for the Hospital and remand for further proceedings.

SHARPNACK, C.J., and BAKER, J., concur.