NICOLAUS STACCATO, Appellant, v.
VALLEY HOSPITAL, Respondent.

No. 42297

November 8, 2007                                    170 P.3d 503

*Law Offices of Richard McKnight, P.C.*, and *Richard McKnight* and *Erik Severino*, Las Vegas, for Appellant.

*Cotkin & Collins* and *Kevin A. Duffis*, Las Vegas, for Respondent.

*Burris, Thomas & Springberg* and *Andrew J. Thomas*, Las Vegas, for Amicus Curiae Nevada Trial Lawyers Association.

Before the Court EN BANC.[1]

## OPINION

*Per Curiam:*

At issue in this appeal is whether a physician is qualified to testify as to the proper standard of care in a malpractice action against a nurse when the allegedly negligent act implicates the physician's realm of expertise. We conclude that a physician or other medical care provider is qualified to testify as to the accepted standard of care for a procedure or treatment if the physician's or provider's experience, education, and training establish the expertise necessary to perform the procedure or render the treatment at issue. In so concluding, we clarify that a medical expert witness need not have the same credentials or classification as the defendant medical care provider. Instead, in accordance with Nevada's statutory scheme governing expert witness testimony, and in furtherance of sound public policy, the proper measure for evaluating whether a witness can testify as an expert is whether that witness possesses the skill, knowledge, or experience necessary to perform or render the medical procedure or treatment being challenged as negligent, and whether that witness's opinion will assist the jury.

In this case, the district court entered a directed verdict for the defense after disqualifying appellant's proposed expert witness, an emergency room physician, on the basis that the physician was not

---

[1]THE HONORABLE MICHAEL L. DOUGLAS, Justice, voluntary recused himself from participating in the decision of this matter. THE HONORABLE MIRIAM SHEARING, Senior Justice, was appointed by the court to sit in his place. Nev. Const. art. 6, § 19; SCR 10.

qualified to testify against a nurse who allegedly administered an intramuscular injection (a procedure for which the physician sufficiently demonstrated his expertise) in a manner contrary to the acceptable standard of care. Because the district court's decision was based on an incorrect legal standard, we reverse its judgment and remand this matter so that appellant's malpractice action may proceed.

## FACTS AND PROCEDURAL HISTORY

Appellant Nicolaus Staccato filed a medical malpractice complaint in the district court against respondent Valley Hospital and an attending physician, who is not a party to this appeal. In his complaint, Staccato asserted that when he was admitted to the Valley Hospital emergency room after seeking treatment for back pain, the attending physician ordered a pain reliever to be administered by injection, after which Staccato strongly protested, informing hospital staff that he feared needles and warning that he would "pass out" if given an injection. Staccato alleged that, although he continued to protest, a nurse instructed him to stand over a gurney while she administered the injection. According to Staccato, the nurse then left him unattended, in a standing position, at which time he lost consciousness and struck his head, resulting in a laceration and a brain injury. During the litigation, Staccato designated Paul Fischer, M.D., an emergency room physician, as a standard-of-care expert witness.

Shortly before trial was scheduled to begin, Valley Hospital deposed Dr. Fischer, who testified that, under ordinary circumstances, administering an intramuscular injection in any position other than supine would fall below the standard of care. According to Dr. Fischer, the hospital's failure to heed Staccato's warnings with regard to his fear of shots, and the nurse's failure to monitor Staccato after administering the shot contributed to Staccato's avoidable accident. Given Staccato's warning, Dr. Fischer continued, administering the shot while Staccato was in an upright position was indefensible. Dr. Fischer ultimately opined that the hospital's task is to monitor nurses and, in this case, the nurse's actions were below the acceptable standard of care. During his deposition, Dr. Fischer acknowledged that he is not a nursing expert.

Subsequently, Valley Hospital filed a motion in limine to preclude Dr. Fischer from testifying about the "nursing standard of care." The district court granted the motion. On the same day, after Staccato conceded that without Dr. Fischer's testimony, he could not carry his burden of proof regarding whether the accepted standard of care was breached, the district court granted Valley Hospital's motion for a directed verdict and entered judgment in Valley Hospital's favor.

Staccato then moved for a new trial, arguing that the district court had improperly precluded Dr. Fischer from testifying.[2] Valley Hospital opposed the motion, and the district court later entered an order denying Staccato's motion and retaxing Valley Hospital's costs. It also granted Staccato's attorney's motion to withdraw. Staccato then filed this appeal in proper person from the district court's judgment and its order denying his motion for a new trial. He has since retained counsel on appeal.

## DISCUSSION

### Dr. Fischer's qualifications to administer intramuscular injections

Preliminarily, Staccato argues that as a physician with training and education beyond what nurses receive, Dr. Fischer is qualified to both administer intramuscular injections and to attest to the acceptable standard of care for that procedure, regardless of whether a nurse administered the injection at issue. Valley Hospital concedes that both nurses and physicians may administer intramuscular injections. Nevertheless, it maintains that the existence of a "cross-training between the disciplines does not mean that there is a universal standard of care in performing that procedure."

Since both parties agree that Dr. Fischer has the training, education, and specialized knowledge necessary to administer an intramuscular injection, we now address the more refined issue of whether Dr. Fischer is qualified to testify about the standard of care that a nurse must exercise in administering such an injection.

### The parties' arguments regarding Dr. Fischer's qualification to testify against a nurse as a standard-of-care expert

Valley Hospital maintains that, because Dr. Fischer admitted that he was not "an expert in nursing care," he was properly excluded as a witness.[3] Pointing to the unique licensing and regulatory scheme governing the nursing profession, Valley Hospital argues that a physician's knowledge about administering intramuscular injections does not qualify the physician to attest to a nurse's approach to such an injection. Thus, just as the nursing profession

---

[2]Although Staccato, in his new trial motion, also challenged the court's decision to exclude several proposed expert witnesses who were named after the discovery deadline, we perceive no abuse of discretion in the district court's decision to exclude any untimely designated witnesses, and we decline to disturb that decision on appeal. *See Hansen v. Universal Health Servs.*, 115 Nev. 24, 28, 974 P.2d 1158, 1160-61 (1999) (providing that district court orders regarding discovery timing supersede NRCP 26(b), and acknowledging the district court's discretion to limit the number of expert witnesses allowed to testify).

[3]Valley Hospital also maintains that Dr. Fischer "testified that he did not know the standards of care." Because the record belies Valley Hospital's assertion, we decline to further address that argument.

might not expect nurses to recognize conditions that an emergency room physician is expected to recognize, Valley Hospital posits that the converse is likewise true.

Staccato replies that Valley Hospital's reliance on authority from other jurisdictions adopting a narrow view that an expert must be licensed in the same specialty as the defendant is misplaced because this court has consistently rejected "per se rule[s] of disqualification based on licensure." Instead, Staccato urges that an expert need not specialize in the same area as the defendant as long as their fields of expertise overlap to the extent that they are both trained to perform the procedure at issue. According to Staccato, because physicians are qualified to attest to the standard of care appropriate for intramuscular injections, it would be anomalous to conclude that these same physicians could not offer standard-of-care opinions against nurses on that subject.

*Standard of review and legal standards applicable to expert witness qualification*

As the parties' arguments center on whether the district court applied the proper legal standard in determining whether Dr. Fischer qualified as an expert medical witness, our plenary review is implicated.[4] Although the district court has discretion in determining whether a witness is qualified as an expert and whether the witness's testimony is admissible,[5] the district court abuses its discretion if it applies an incorrect legal standard.[6] Generally, a plaintiff must present expert medical testimony to establish medical malpractice.[7] But "[t]here is no requirement that the expert medical witness be from the same specialty as the defendant; the issue is simply one of the witness'[s] actual knowledge."[8] Indeed, an ex-

---

[4]*See Milton v. State, Dep't of Prisons*, 119 Nev. 163, 68 P.3d 895 (2003) (explaining that an argument that the district court applied the wrong legal standard raises a purely legal question, subject to de novo review); *Bronneke v. Rutherford*, 120 Nev. 230, 232, 89 P.3d 40, 42 (2004) (applying a de novo standard of review in an appeal from an order denying a new trial motion, since appellant primarily was challenging the district court's pretrial ruling concerning the legal viability of his claim).

[5]NRS 50.275; *Krause Inc. v. Little*, 117 Nev. 929, 933-34, 34 P.3d 566, 569 (2001).

[6]*See, e.g., Bergmann v. Boyce*, 109 Nev. 670, 677, 856 P.2d 560, 564 (1993) (noting that the trial court abuses its discretion when it applies an incorrect legal standard).

[7]NRS 41A.100; *see also Jain v. McFarland*, 109 Nev. 465, 474, 851 P.2d 450, 456 (1993).

[8]*Rees v. Roderiques*, 101 Nev. 302, 304, 701 P.2d 1017, 1019 (1985); *see also Jain*, 109 Nev. at 474, 851 P.2d at 456; *Brown v. Capanna*, 105 Nev. 665, 671, 782 P.2d 1299, 1303 (1989) (indicating that a proposed medical expert

pert witness need not be licensed to practice in a given field to be considered qualified to testify as an expert.[9]

*The appropriate standard of care is governed by the procedure or treatment at issue, not the defendant's practice area or specific license*

Here, Valley Hospital relies primarily on Illinois decisional law for its argument that a physician is not qualified to attest to the nursing standard of care.[10] For example, Valley Hospital points to the Illinois Supreme Court's decision in *Sullivan v. Edward Hospital*, in which the court, indicating that the nursing profession has moved beyond its former dependence on physicians and "into a realm where it must and can legally account for its own professional practices," affirmed a trial court order striking a physician's testimony regarding the standard of care for nurses after concluding that such testimony might result in a higher standard of care being imposed upon the defendant nurse.[11]

We reject Valley Hospital's argument and the Illinois approach for two reasons. First, in Illinois, expert qualification turns on the particular credentials of the defendant medical caregiver,[12] but in Nevada, expert witness assessment turns on whether the proposed witness's special knowledge, skill, experience, training, or education will assist the jury.[13] Therefore, a physician or other medical

should not be scrutinized by an overly strict test of qualifications); NRS 50.275 (providing that "a witness qualified as an expert by special knowledge, skill, experience, training[,] or education may testify to matters within the scope of such knowledge").

[9]*Wright v. Las Vegas Hacienda*, 102 Nev. 261, 263, 720 P.2d 696, 697 (1986); *see also Borger v. Dist. Ct.*, 120 Nev. 1021, 1027-28, 102 P.3d 600, 605 (2004) (explaining that admissibility of expert witness testimony " 'is governed by the scope of the witness'[s] knowledge and not the artificial classification of the witness by title' " (quoting *Marshall v. Yale Podiatry Group*, 496 A.2d 529, 531 (Conn. App. Ct. 1985))).

[10]Aside from Illinois cases, Valley Hospital relies on two unreported trial court decisions, one from Pennsylvania and one from Virginia. Neither court, however, cited to any legal authority for its decision to preclude physicians from testifying about the standard of care that defendant nurses had rendered.

[11]806 N.E.2d 645, 659-60 (Ill. 2004) (internal quotation marks omitted).

[12]*See id.*; *Dolan v. Galluzzo*, 396 N.E.2d 13, 16 (Ill. 1979) (holding that "in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein").

[13]NRS 50.275; *see Rees*, 101 Nev. at 304, 701 P.2d at 1019; *Jain*, 109 Nev. at 474, 851 P.2d at 456. Nurses, likewise, have been deemed qualified to testify against physicians when they have demonstrated the requisite skill or knowledge to do so. *See Carolan v. Hill*, 553 N.W.2d 882, 889 (Iowa 1996)

provider is not automatically disqualified from testifying against a defendant who specializes in a different area of medicine or who practices in a different medical discipline.[14] Second, in our view, the Illinois approach is contrary to sound public policy because a separate nursing standard of care governing medical treatment does not exist. To the contrary, nurses generally are prohibited from providing medical diagnoses and provide treatment only under physician directives or in emergency situations. Although Valley Hospital maintains that Dr. Fischer's expert opinion would potentially hold the nurse involved in the alleged negligence to a standard higher than her profession requires, since both Dr. Fischer and the nurse are qualified to administer intramuscular injections, we perceive no distinction between what standard of care is acceptable based on their specialized credentials. Instead, the acceptable standard of care is governed by the procedure or treatment at issue, not the defendant's practice area or specific license.

In states like Nevada, where the focus of expert witness qualifications is directed at the scope of the witness's practical knowledge in light of the particular circumstances of the case, courts have routinely allowed physicians to testify against nurses with respect to the accepted standard of care.[15] For example, in *Justice v. Clark Memorial Hospital*,[16] the Indiana Court of Appeals concluded that the plaintiff's medical expert, a physician, was qualified to give an opinion that a nurse inappropriately administered an injection to the plaintiff subcutaneously rather than intramuscularly. In so doing, the court rejected the respondent hospital's argument that the physician was not qualified to render expert opinion testimony because he was not familiar with the nursing standard of care at the hospital. The court explained that because the physician demonstrated that he knew the difference between subcutaneous and intramuscular injections, evidencing his qualification to give his expert opinion on that question, he was qualified to testify against the

(concluding that lower court improperly excluded a nurse anesthetist's standard-of-care testimony offered against a physician who allegedly negligently administered anesthesia); *Avret v. McCormick*, 271 S.E.2d 832 (Ga. 1980) (explaining that, based on education and experience, a nurse was qualified to offer standard-of-care testimony concerning an injection that a physician allegedly negligently administered).

[14]*See Freeman v. Davidson*, 105 Nev. 13, 15, 768 P.2d 885, 886-87 (1989) (rejecting a per se disqualification rule based on lack of licensure and noting that an expert witness need not be licensed to testify as an expert, as long as he or she possesses special knowledge, training, and education to provide a standard-of-care opinion).

[15]*See Goff v. Doctors General Hospital of San Jose*, 333 P.2d 29, 33 (Cal. Dist. Ct. App. 1958); *Paris v. Michael Kreitz, Jr., P.A.*, 331 S.E.2d 234, 245 (N.C. Ct. App. 1985); *Hall v. Huff*, 957 S.W.2d 90, 100 (Tex. App. 1997).

[16]718 N.E.2d 1217 (Ind. Ct. App. 1999).

nurse who allegedly administered the injection in a negligent manner.[17]

In rendering its decision, the *Clark Memorial Hospital* court clarified that the relevant inquiries for deciding whether an expert is qualified are whether (1) the subject matter is distinctly related to some scientific field or profession beyond the average person's knowledge; and (2) the witness has sufficient skill, knowledge, or experience in the area at issue so that the opinion will aid the jury.[18] Because Nevada's statutes provide requirements similar to Indiana's evidentiary rules with respect to the admissibility of expert testimony,[19] and because Nevada does not require that a witness be licensed in the same discipline as the defendant in order to be qualified as an expert, we adopt the Indiana approach as a means for evaluating whether a witness qualifies as an expert in a medical malpractice action. Accordingly, since, as Valley Hospital acknowledges, Dr. Fischer demonstrated that he had sufficient skill, knowledge, experience, and training to qualify him as an expert in administering intramuscular injections, the district court applied the incorrect legal standard when it refused to allow him to offer standard-of-care testimony in this case. Thus, we reverse the district court's judgment and remand this matter to the district court. Since we are reversing the district court's judgment, we dismiss as moot that portion of Staccato's appeal from the order denying his new trial motion.

## CONCLUSION

Because Dr. Fischer sufficiently demonstrated the required expertise to offer standard-of-care testimony in this case, and because the fact that Dr. Fischer's testimony was offered against a nurse is wholly irrelevant to Dr. Fischer's qualifications to testify as to the acceptable standard of care for the procedure at issue here, the dis-

---

[17]*Id.* at 1221.

[18]*Id.*; *see also Wick v. Henderson*, 485 N.W.2d 645, 648 (Iowa 1992) (concluding that, in a case involving an ulnar nerve that was injured during surgery, a neurologist who had education, experience, and training related to the nervous system was qualified to testify as to whether a nurse anesthetist breached the appropriate standard of care in monitoring the position and location of, and pressure against, the patient's arm during surgery); *Wall v. Fairview Hosp.*, 584 N.W.2d 395 (Minn. 1998) (concluding that a psychologist and psychotherapist were not competent to testify about the accepted standard of care for a psychiatric nurse because neither had the requisite scientific background, *i.e.*, medical training or practical experience of supervising a psychiatric nurse and, thus, they could not serve as expert witnesses regarding the standard of care that the nurse allegedly breached).

[19]*Compare* NRS 50.275, *with* Ind. R. Evid. 702.

trict court applied an incorrect legal standard in entering an order excluding Dr. Fischer as an expert witness. In so doing, the court abused its discretion. Accordingly, since the district court's directed verdict stemmed from its order excluding Dr. Fischer, we reverse the district court's judgment directing a verdict in Valley Hospital's favor, and we remand this matter to the district court so that Staccato may proceed with his malpractice action.

SHEARING, Sr. J., concurring:

I concur completely with the views expressed in the majority opinion. However, I would go further and maintain that no expert medical opinion is necessary to establish negligence under the circumstances of this case. The negligence alleged is not of the type that is peculiarly within the knowledge of medical experts. The patient told the nurse that he is afraid of needles and warned that he would pass out if given an injection. Nevertheless, the nurse proceeded to give the patient an injection in a standing position. As predicted, the patient lost consciousness, fell, and struck his head. A juror would not need a medical expert to understand that the nurse was negligent in failing to heed a clear warning that the patient would fall if given an injection in a standing position.[1] The resulting injury to the patient was foreseeable.

----

[1]See Krause Inc. v. Little, 117 Nev. 929, 938-39, 34 P.3d 566, 572 (2001) (concluding that a jury did not require a medical expert's testimony to appreciate the extent to which a broken bone causes pain and suffering and what amount of future damages would be appropriate).