MICHAEL JOSEPH CIRILLO, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 12155

June 4, 1980                                    611 P.2d 1093

*Jeffrey D. Sobel,* Las Vegas, for Appellant.

*Richard Bryan,* Attorney General, Carson City; and *Robert J. Miller,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, C. J.:

Michael Joseph Cirillo appeals from the judgment of conviction entered by the district court upon a jury verdict finding Cirillo guilty of murder in the second degree. We hold that the admission into evidence of testimony concerning other crimes was prejudicial error. We therefore reverse and remand for a new trial.

Cirillo was charged with the murder of Manuel Vega. At trial, Toni Rizzo testified that at about two in the afternoon on April 7, 1978, she had gone to Paradise Park in Las Vegas to jog. There she saw appellant Cirillo and John Santini with Manuel Vega. Cirillo asked Rizzo to follow the three of them. The three men got into a car, with Vega driving. Rizzo followed them in a car which belonged to Cirillo. Rizzo lost sight of the other car momentarily, when she had to wait for cross traffic at a stop sign. When she caught up with the car it was parked by the side of the road in a vacant lot. Santini and Cirillo were standing by the car, but Vega was nowhere to be seen: Cirillo told her that Vega had to go somewhere. Santini and Cirillo then got into the car that Rizzo was driving, and she drove them to the house which the two men shared. On the way, Cirillo asked Rizzo to slow down. He put his hand out the window, but she did not see him throw anything from the car.

Vega had meanwhile staggered into a store which was about a block from where Rizzo had picked up Santini and Cirillo. Vega was bleeding from a knife wound in the chest which had pierced his heart. He would not say, however, who had stabbed him, and he died in the hospital seven days later.

Later in the day of the assault, Cirillo, Santini and Rizzo were arrested. The police took Rizzo to the place where she said that she had slowed down the car at Cirillo's request. A search of the side of the road uncovered two kitchen knives, one with blood on it but no fingerprints, and one with Cirillo's fingerprints on it but no blood. The shirt Cirillo had been wearing was found at his house with traces of what may have been blood on it.

Santini and Cirillo were charged with the murder of Vega. After a preliminary hearing, both were bound over for trial and an information filed. Both defendants sought writs of habeas corpus in the district court, on the ground that there was insufficient probable cause to hold them for trial. The writ was granted to Santini but denied to Cirillo.

At Cirillo's trial, Tracy Szafraniek was permitted to testify, over defense objections, that at about noon on the day of the assault Santini and Cirillo had approached him and a friend in Paradise Park and asked if they wanted to buy marijuana. When Szafraniek and his friend declined, Santini and Cirillo pushed them out of the park, threatening them with harm if they returned. Additionally, David Chisam, a friend of Vega's, was permitted to testify that he and Vega routinely went to the park in order to purchase marijuana, and that Vega had been on such an errand on the day he was stabbed. Finally, a small quantity of marijuana, which had been seized in a search of the

house shared by Santini and Cirillo, was also admitted into evidence.

The jury returned a verdict of guilty of second degree murder, and the district court entered judgment upon the verdict. Cirillo appeals, assigning numerous errors in the conduct of the trial. We need reach only the question whether it was error to permit the introduction of the evidence of the other crimes or acts of misconduct.

The district court predicated its ruling to admit the evidence relating to appellant's dealing in drugs and to his confrontation with the witness Szafraniek on the grounds that the evidence showed a "plan or absence of mistake," and further that the state was "entitled to present a full and accurate account of the circumstances of the commission of the crime." On the facts of this case, we believe this was error.

■■■■■■■

Admission of evidence of crimes or acts of misconduct other than the crime with which the defendant is charged is governed by statute.[1] The "absence of mistake" exception is applicable only when the evidence tends to show the defendant's knowledge of a fact material to the specific crime charged. Thus evidence of previous instances of possession may be used to show the defendant's knowledge of the controlled nature of a substance, when such knowledge is an element of the offense charged, Lindsay v. State, 87 Nev. 1, 478 P.2d 1022 (1971); Fairman v. State, 83 Nev. 137, 425 P.2d 342 (1967); Overton v. State, 78 Nev. 198, 370 P.2d 677 (1962); Wallace v. State, 77 Nev. 123, 359 P.2d 749 (1961).[2] The evidence introduced here, however, does not tend to show Cirillo's knowledge with respect to any fact relevant to the murder of Vega with which he was charged. The admission of the evidence cannot therefore be justified upon this ground.

■■■■■■■

Evidence admitted under the "common scheme or plan" exception, NRS 48.045(2), must tend to prove the defendant's commission of the charged crime by showing that the defendant planned to commit it. See Nester v. State of Nevada, *supra*.

---

[1]NRS 48.045(2) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[2]The admissibility of any such evidence is further conditioned upon a specific finding by the district court that its probative value outweighs its prejudicial impact. NRS 48.035(1); Mayes v. State, 95 Nev. 140, 591 P.2d 250 (1979); Nester v. State of Nevada, 75 Nev. 41, 334 P.2d 524 (1959).

The evidence of appellant's confrontation with Szafraniek and of his possible involvement in drug transactions does not reveal any preconceived plan on his part with respect to the murder of Vega. Fairman v. State, *supra;* Tucker v. State, 82 Nev. 127, 412 P.2d 970 (1966); 2 Wigmore, Evidence § 304 (Chadbourn rev. 1979). Since the evidence does not show any plan to commit the crime with which the defendant was charged, it was not admissible under this exception.

The district court also ruled the evidence admissible because the state was "entitled to present a full and accurate account of the circumstances of the commission of the crime." The "complete story of the crime" exception[3] to the inadmissibility of evidence of acts other than the crime with which the defendant is charged is defined by statute. NRS 48.035(3);[4] *see also,* Dutton v. State, 94 Nev. 461, 581 P.2d 856 (1978); Allan v. State, 92 Nev. 318, 549 P.2d 1402 (1976); Payne v. State, 81 Nev. 503, 406 P.2d 922 (1965). The statute permits the admission of evidence of other acts when the act shown "is so closely related to an act in controversy or the crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime. . . ." In the case at bar, the primary evidence which tended to link appellant with the murder of Vega was the testimony of Rizzo, which placed Santini and Cirillo with the victim shortly before he was discovered bleeding from a knife wound in the chest. Not only was Rizzo capable of describing what she saw of appellant's encounter with Vega without referring to the previous incident with Szafraniek, and without any reference to supposed drug dealing, but there is no indication that she even knew of these other events. There is not the slightest indication in the record before us that appellant's confrontation with Szafraniek was a "necessary incident" of the murder of Vega, or an "immediate concomitant" of it, or formed part of a "continuous transaction" of which the murder was a part. Allan v. State, *supra;* State v. Morris, 340 So.2d 195, 201 (La. 1976). Nor did the evidence relate to a "part of the main transaction without knowledge of which [the crime charged] might not be understood." Dixon v. State, 560 P.2d 204, 206 (Okla.Crim. 1977).

---

[3]Also known as the *res gestae* exception. *But see* Allan v. State, 92 Nev. 318, 322, 549 P.2d 1402, 1404 (1976) (Gunderson, J., concurring).

[4]At the time of appellant's trial, NRS 48.035(3) provided:

Evidence of another act or crime which is so closely related to an act in controversy or a crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other

494

In sum, admission of the challenged evidence forced appellant to defend against accusations of crimes with which he was not charged, *see* Tucker v. State, 82 Nev. at 130, 412 P.2d at 971; Nester v. State of Nevada, 75 Nev. at 47, 334 P.2d at 527, and permitted the jury to infer his guilt from evidence tending to show his bad character in general, NRS 48.045(1); Tucker v. State, *supra*. The prejudice occasioned by its admission mandates that a new trial be granted. Mayes v. State, 95 Nev. at 143, 591 P.2d at 252; Lindsay v. State, 87 Nev. at 3, 478 P.2d at 1023. Accordingly, the judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.

act or crime shall not be excluded, but a cautionary instruction shall be given explaining the reason for its admission.

The statute was amended, effective July 1, 1979, to read "but at the request of an interested party, a cautionary instruction shall be given explaining the reason for its admission." 1979 Nev. Stats. ch. 29, § 1.