RICHARD HANSEN, Appellant, *v.* UNIVERSAL HEALTH SERVICES OF NEVADA, INC., dba VALLEY HOSPITAL MEDICAL CENTER; JOHN THALGOTT, M.D., and JOHN THALGOTT, M.D., INC., Respondents.

No. 25848

March 24, 1999                                                974 P.2d 1158

*Robert D. Walker* and *Gerald F. Neal,* Las Vegas, for Appellant.

*Pearson, Patton, Shea, Foley & Kurtz,* Las Vegas, for Respondent Universal Health Services of Nevada.

*Mayor & Horner, Ltd.,* and *Janiece S. Marshall,* Las Vegas, for Respondent Thalgott.

Before ROSE, C. J., YOUNG, MAUPIN and SHEARING, JJ.

## OPINION

By the Court, SHEARING, J.:

Appellant Richard Hansen ("Hansen") suffered a severe and debilitating infection after respondent Dr. John M. Thalgott ("Dr. Thalgott") attached a steel plate to Hansen's spine, using bone screws (the "surgery"). The surgery was performed at Valley Hospital Medical Center ("Valley Hospital"), which was owned by respondent Universal Health Services of Nevada, Inc. ("UHS"). Hansen filed a medical malpractice action against Dr. Thalgott and UHS, alleging that they were negligent. A jury found in favor of Dr. Thalgott and UHS. Hansen appeals, arguing the district court abused its discretion in making evidentiary rulings which prevented him from substantiating his case.

*FACTS*

In March 1987, Hansen sustained a back injury. After a short period of physical therapy, Hansen was referred to Dr. Thalgott for treatment. Thereafter, Dr. Thalgott performed spinal plate fixation surgery on Hansen, attaching a steel plate to his spine using bone screws. The surgery was performed at Valley Hospital, which UHS owned at the time of Hansen's surgery.

Following the surgery, Hansen's incision became severely infected. According to UHS, Hansen had experienced several episodes of bowel incontinence that caused the introduction of fecal material into Hansen's wound, resulting in "gross contamination." Hansen's medical expert testified that Hansen's infection was either caused by Valley Hospital's failure to prevent this fecal contamination or by an unusually large dose of steroids that Dr. Thalgott prescribed for Hansen to reduce inflammation. In contrast, Dr. Thalgott and several other medical experts testified that Hansen's infection was not attributable to fecal contamination or the steroid treatment, but instead was caused by necrosis of the muscle tissue adjacent to the wound site.

Hansen was released from Valley Hospital, but his infection became so severe that he was readmitted, and was eventually transferred to the University Medical Center. At University Medical Center, Hansen underwent a series of operations on the musculature of his back. Eventually, the steel plate had to be surgically removed because Hansen's infection persisted. After removal of the steel plate, Hansen testified that he continued to suffer from debilitating pain and infection that greatly restricted his normal activities. Additionally, Hansen incurred medical expenses that exceeded $700,000.00.

*DISCUSSION*

*Exclusion of Lack of FDA-Approval*

Hansen's first allegation of reversible error is that the district court excluded evidence of the fact that the surgical procedure Dr. Thalgott performed was not approved by the Food and Drug Administration (FDA). Several evidentiary documents that Hansen sought to introduce referred to the fact that the surgery was not approved by the FDA, including Hansen's hospital chart, his consent form, and an article authored by Dr. Thalgott. The district court redacted any mention of the non-FDA approved status from these items of evidence, finding it was irrelevant and would confuse the jury. The district court also prohibited any witnesses at trial from referring to the non-FDA approved status of the surgery.

The district court's refusal to allow evidence of the fact that the surgical procedure performed had not been approved by the FDA was within its discretion. Although the implantation of the steel plate on the spine had not been specifically approved by the FDA, and the consent form Hansen signed included this information, Hansen concedes that the FDA does not prohibit implantation of the device in the human body. The FDA has approved implantation of the device in other locations of the body. In support of admission, Hansen argued that a different standard of care is required when a procedure is not FDA-approved. The district court correctly rejected this argument. It found that the lack of FDA approval did not change the standard of negligence and that inclusion in evidence of the FDA's role would confuse the jury. This exclusion was not an abuse of discretion. Even though a contrary finding would also have been within the court's discretion with regard to the standard of care upon which the jury was instructed, this court will not overturn the district court's exclusion of relevant evidence absent an abuse of discretion. Jeep Corporation v. Murray, 101 Nev. 640, 646, 708 P.2d 297, 301 (1985).

*Exclusion of SIIS Survey*

Hansen argues that the district court erroneously excluded a March 1989, State Industrial Insurance System survey of the medical complications experienced by Dr. Thalgott's patients who had also had the surgery. Hansen alleged that the SIIS survey was relevant to establish that Hansen's injuries were caused by Dr. Thalgott's negligence.

It appears that the district court excluded the SIIS report under NRS 48.036(1) because the probative value was substantially outweighed by the danger of confusing the issues and misleading the jury. The district court quoted from Chowdhry v. NLVH, Inc., 109 Nev. 478, 485, 851 P.2d 459, 463 (1993), in which this court stated that where evidence is marginally relevant and could inject collateral issues which would divert the jury from the real issues in the case, exclusion is proper.

Exclusion of the SIIS survey, which consisted of brief descriptions of numerous other cases in which Dr. Thalgott performed surgery, was appropriate. The district court could properly find that injecting these other cases into Hansen's trial would prolong the trial, confuse the issues and divert the jury from Hansen's case to collateral matters. Dr. Thalgott also argued that the report was inaccurate in some respects and unreliable, having been pre-

pared by non-medical personnel who were motivated toward reaching a particular result. Under the circumstances, the district court's ruling was correct.

*Health and Human Resources Report*

Hansen alleges that the district court erred in excluding from evidence the Nevada State Department of Health and Human Resources Report ("HHR Report") identifying inadequacies in Valley Hospitals infection control practices and procedures.

Although Hansen now alleges that the district court's order is error, it appears in the transcript of the hearing on UHS's motion in limine that Hansen's counsel stipulated that he would not introduce the HHR Report unless the defense "opened up" the topic. Furthermore, the district court was within its discretion in refusing to admit a report of unrelated infections at Valley Hospital for the same reasons it denied admission of the SIIS survey, namely, confusing the issues and diverting the jury with collateral matters.

*Additional Expert Witnesses*

In October and November 1991, the parties each filed their designation of experts. The court had set a deadline for the designation of experts for January 21, 1992, pursuant to the Discovery Commissioner's Report and Recommendation. The trial was scheduled for February 22, 1993, but was continued to September 1993. In July 1993, Hansen submitted a second designation of experts that included three new experts. Dr. Thalgott and UHS objected to the additional designation as untimely and the district court apparently agreed, disallowing the additional witnesses. Hansen argues that his designation of experts was timely because it was submitted within the time limits imposed by NRCP 26(b)(5)(B) which provides in relevant part that:

> [expert witness lists must be exchanged] 20 days after the date of service of demand on the party (3 days shall be added to the prescribed time if served by mail . . .) or 70 days prior to the date set for the commencement of trial, whichever is later.

However, the orders of the district court regarding the timing of discovery supersede NRCP 26(b)(5)(B). Furthermore, a trial court is vested with discretion to simplify the issues and limit the number of expert witnesses allowed to testify. *Jeep Corporation,* 101 Nev. at 646, 708 P.2d at 301. It does not appear that Hansen was precluded from raising any relevant issues and it appears that either the defendants would have been prejudiced or the trial date

would have had to be continued once again to allow discovery if the new experts were to testify. Accordingly, we conclude that the district court did not abuse its discretion in refusing to allow Hansen's untimely-designated experts to testify.

## CONCLUSION

We conclude that the district court did not abuse its discretion in its evidentiary rulings, and therefore we affirm the judgment of the district court.[1]

YOUNG and MAUPIN, JJ., concur.

ROSE, C. J., dissenting:

I agree with the majority that the district court has discretion to exclude relevant evidence that is highly prejudicial. See NRS 48.035. However, the district court abuses its discretion when it excludes critical evidence that the plaintiff needs to prove an essential element of his disputed claim. See McCourt v. J.C. Penney Co., 103 Nev. 101, 103, 734 P.2d 696, 698 (1987) ("where the facts are sharply disputed and the matter is tried to the jury, and there is proper foundation shown, the court should allow the evidence").

Here, Hansen claimed that he did not give his informed consent for Dr. Thalgott to attach a metal plate to Hansen's spine using bone screws, a medical procedure that had not been approved by the FDA.[1] In support of his claim, Hansen proffered evidence that the words "non-FDA approved" were handwritten on Hansen's informed consent form and noted fourteen times on Hansen's medical chart. Despite the fact that this evidence was necessary to prove that Dr. Thalgott did not adequately inform Hansen of the risks associated with the procedure, the court redacted any references to the "non-FDA approved" status of Hansen's medical procedure from his consent form, medical chart, and even went so far as to prohibit any witness from mentioning the procedure's "non-FDA approved" status. Hansen could not ask Dr. Thalgott why he added the "non-FDA approved" notation on the consent form, what the significance was of a surgical procedure not being FDA approved, and what Dr. Thalgott told Hansen of the risks involved in the non-FDA approved surgery when he made the additional notation. Since

---

[1]This matter was submitted for decision prior to expansion of the court from five to seven justices on January 4, 1999; only those justices remaining on the court who previously heard this matter participated in the decision.

[1]In fact, after Hansen's medical procedure, the FDA prohibited medical doctors from attaching this metal plate to spines because of the risks associated with the procedure.

Hansen's claim was that Dr. Thalgott performed an experimental surgery on him without adequately informing him of the surgery and its risks, the unedited consent and this cross-examination would have been highly relevant and material. Essentially, because the district court actually edited Hansen's consent form and medical charts, redacting out an essential term, the jury got an artificial version of the consent process. I dissent because altering a key term in a document that proves an essential issue in a case is an abuse of discretion.

Additionally, the district court excluded a State Industrial Insurance System audit made in the normal course of business that documented that only seven out of forty-five of Dr. Thalgott's patients who had the same metal plate as Hansen attached to their spines recovered enough to return to the workforce. I disagree with the majority that this evidence was "collateral" and would "confuse the issues" in this case. This evidence was relevant similar-act evidence admissible to prove that Dr. Thalgott's negligence caused Hansen's severe and debilitating injuries. *See* Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 415, 470 P.2d 135, 139 (1970) (evidence of subsequent, similar incidents is admissible to establish causation). After all, an objective government agency report noting that Dr. Thalgott's non-FDA approved steel plate procedure was successful only approximately fifteen percent of the time is highly relevant as to whether he acted within the standard of care. This statistical evidence is not collateral, and thus the district court abused its discretion in preventing Hansen from telling the jury about the other thirty-seven times Dr. Thalgott had performed this non-FDA approved procedure, and failed to return his patient to the workforce.

By its ruling, the district court prevented Hansen from mentioning an essential term on the consent form that he signed and from discussing numerous complications sustained by Dr. Thalgott's other patients who had the steel plate attached to their spine. By sanctioning these rulings, the majority opinion is permitting the district court to selectively edit crucial documents and preventing a party from establishing the major adverse consequences of a medical procedure by using public records.

Accordingly, I respectfully dissent, and I would reverse the judgment and remand for a new trial.