138 Nev., Advance Opinion 17

# IN THE SUPREME COURT OF THE STATE OF NEVADA

BARRY JAMES RIVES, M.D.; AND
LAPAROSCOPIC SURGERY OF
NEVADA, LLC,
Appellants/Cross-Respondents,
vs.
TITINA FARRIS; AND PATRICK
FARRIS,
Respondents/Cross-Appellants.

No. 80271

**FILED**

MAR 31 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

BARRY JAMES RIVES, M.D.; AND
LAPAROSCOPIC SURGERY OF
NEVADA, LLC,
Appellants,
vs.
TITINA FARRIS; AND PATRICK
FARRIS,
Respondents.

No. 81052

Consolidated appeals and a cross-appeal from a district court judgment in a medical malpractice action and a post-judgment order awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Joanna Kishner, Judge.

*Reversed in part, vacated in part, and remanded.*

Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno,
for Appellants/Cross-Respondents.

Claggett & Sykes Law Firm and Micah S. Echols, Las Vegas; Hand & Sullivan, LLC, and George F. Hand, Las Vegas; Bighorn Law and Kimball J. Jones and Jacob G. Leavitt, Las Vegas,
for Respondents/Cross-Appellants.

22-09994

## OPINION

By the Court, CADISH, J.:

Appellants appeal from a $6 million judgment, challenging several evidentiary rulings they claim warrant reversal and remand for a new trial. Respondents assert that because appellants did not move for a new trial in district court, they waived the issues, such that their assignments of error on appeal cannot provide the basis for a new trial. Respondents fail to present a convincing argument that the procedural bars they claim prohibit our review on the merits apply here. The plain language of our jurisdictional rules confirms that appellants are not required to file a motion for a new trial in district court to preserve their ability to request a new trial on appeal. As to the merits of appellants' claims, we conclude that the district court abused its discretion by admitting evidence of another medical malpractice case against appellant Barry James Rives, M.D., as that evidence was not relevant for an admissible purpose, and any potential relevance was substantially outweighed by the evidence's fairly obvious prejudicial effect. As this evidentiary ruling was harmful, we reverse the judgment, vacate the attorney fees and costs order, and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

Respondent Titina Farris suffered from back pain with pain and burning in her feet. She was diagnosed with uncontrolled diabetes causing neuropathy. In 2014, Farris was referred to appellant Barry James Rives, M.D., for swelling in her upper abdomen. Rives diagnosed Farris with a hernia, which he surgically repaired on two occasions, first in 2014

and second in 2015. During the second surgery, Rives noticed that part of Farris's colon was stuck in the mesh from the 2014 surgery. Rives freed the colon from the mesh; however, he caused two small holes in the colon, which he repaired with a stapling device. Farris had several problems following the 2015 surgery, including sepsis. Although a CT scan on July 5 and an x-ray on July 12 showed no signs of a leak in Farris's colon, a CT scan on July 15 showed a leak, which another surgeon corrected. But Farris's sepsis continued, and she eventually developed drop foot in both feet, hindering her ability to walk unassisted. Farris and her husband, respondent Patrick Farris (collectively "respondents"), filed this medical malpractice lawsuit against Rives and appellant Laparoscopic Surgery of Nevada LLC (collectively "appellants"), alleging that Rives fell below the standard of care in performing the surgery and monitoring Farris after, that Laparoscopic Surgery of Nevada LLC was vicariously liable for Rives's actions, and for loss of consortium.

In an unrelated matter, another patient, Vickie Center, sued Rives for malpractice related to her hernia surgery, which took place five months before Farris's surgery. The same defense firm represented Rives in both the *Farris* and *Center* cases. In the *Center* case, Rives responded to an interrogatory that asked him to provide information concerning other lawsuits in which he was involved. One month later, Rives responded to a similar interrogatory request in the *Farris* case, and his attorney copied the interrogatory responses from the *Center* case without adding the *Center* case to the list of other suits.

Respondents' counsel deposed Rives. At the deposition, counsel asked questions regarding the other cases Rives disclosed in his interrogatory response. Rives's responses did not mention the *Center* case,

but defense counsel interjected with information about that case. Rives was then asked several questions regarding the *Center* case, and respondents' counsel discussed the *Center* case with Center's counsel "weeks to months before the trial in" the *Center* case started.

Before the trial in this matter, respondents filed a pretrial motion for sanctions, contending that Rives intentionally concealed the *Center* case. Respondents asserted that they "had no reasonable opportunity to further investigate this critical and admissible information" and requested that the district court strike appellants' answer. Appellants opposed, arguing that the omission was accidental and there was no prejudice to respondents. They also argued that the *Center* case was not admissible, as it was irrelevant, unduly prejudicial, misleading to the jury, and improper character evidence.

The district court held an evidentiary hearing on the motion, at which Rives testified that he relied on his counsel to prepare the interrogatory responses in the *Farris* case and conceded that he did not read them. The district court concluded that Rives "relied on counsel" to prepare the interrogatory responses and, thus, had "an intent not to read the interrogatories," which the court considered "intentional conduct" warranting an adverse-inference instruction.[1] While the district court

---

[1]Ultimately, the district court read the following adverse-inference instruction before the opening statements and at the end of trial:

> Members of the jury, Dr. Barry Rives was sued in a medical malpractice case in case *Vickie Center v. Barry James Rives, M.D., et al.* Dr. Barry Rives was asked about the *Vickie Center* case under oath, and he did not disclose the case in his interrogatories or at his deposition. You may infer

permitted respondents to introduce evidence of the *Center* case, it did not make an express ruling on its admissibility until trial.

At trial, respondents mentioned the *Center* case roughly 180 times in front of the jury. Appellants objected several times, on various grounds, including that the evidence was irrelevant and that the danger of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighed the probative value of the *Center* case. While the district court sustained some objections, it often allowed respondents to point to the *Center* case in making arguments or questioning witnesses. Respondents used the *Center* case to imply that Rives should have known his behavior was negligent and hinted that Rives had a propensity to commit malpractice. Respondents elicited that Vickie Center lost her legs because of Rives's actions. The district court allowed an extended examination of Rives regarding whether he informed Center's counsel of the specifics of the *Farris* case and the extent of Vickie Center's similar injuries. Respondents also mentioned the *Center* case in their closing argument.

The jury returned its verdict, concluding that Rives negligently treated Farris, causing her injuries, and awarding respondents $13,640,479.90 in total damages. The district court reduced the jury's award of noneconomic damages to $350,000 pursuant to NRS 41A.035 and entered a judgment for a total of $6,367,805.52. The district court granted in part respondents' motion for attorney fees and costs, awarding

---

that the failure to timely disclose evidence of a prior medical malpractice lawsuit against Dr. Barry Rives is unfavorable to him. You may infer that the evidence of the other medical malpractice lawsuit would be adverse to him in this lawsuit had he disclosed it. This instruction is given pursuant to a prior [c]ourt ruling.

$821,468.66 consistent with NRCP 68 and NRS 7.095, or alternatively, as a sanction for Rives's discovery behavior. Appellants appeal from the judgment and the attorney fees and costs award, while respondents cross-appeal from the judgment to contest the district court's application of NRS 41A.035.

## DISCUSSION

*Appellants did not waive their right to seek reversal and remand for a new trial on appeal by not filing a motion for a new trial in district court*

Appellants assert that the district court committed evidentiary errors warranting reversal and remand for a new trial. Respondents argue that by failing to file a motion for a new trial in district court, appellants waived their ability to request a new trial on appeal. Respondents contend that the failure to seek a new trial in district court deprives the court of the chance to consider and correct any errors and prevents this court from "conduct[ing] a proper review of whether the [d]istrict [c]ourt properly or improperly granted a new trial because there is no appealable order to review." They further argue that appellants "ask this Court to review, in the first instance, their arguments for a new trial, which contain factual issues and would convert this Court into a factfinder." We disagree.[2]

---

[2]Relying on *Rust v. Clark County School District*, 103 Nev. 686, 747 P.2d 1380 (1987), respondents also argue that we lack jurisdiction to consider appellants' challenges to the district court's oral evidentiary rulings made at trial. In *Rust*, we held the following:

> An oral pronouncement of judgment is not valid for any purpose, therefore, only a written judgment has any effect, and only a written judgment may be appealed. The district court's oral pronouncement from the bench, the clerk's minute order, and even

While we have not explicitly addressed whether a party must both object to trial rulings and file a motion for a new trial to preserve the party's ability to request a new trial on appeal, the plain language of our jurisdictional rule and the preserved error rule make it clear that a party is not required to file a motion for a new trial to preserve the party's ability to request such a remedy on appeal for harmful error to which the party objected. First, NRAP 3A(a) expressly provides that "[a] party who is aggrieved by an appealable judgment or order may appeal from that judgment or order, with or without first moving for a new trial." The rule thus contemplates this very situation. Second, it is well-established that a timely objection alone is sufficient to raise and preserve an issue for appellate review. *See Thomas v. Hardwick*, 126 Nev. 142, 155, 231 P.3d 1111, 1120 (2010) (concluding that when a trial court properly declines to

---

an unfiled written order are ineffective for any purpose and cannot be appealed.

*Id.* at 689, 747 P.2d at 1382 (internal citations omitted). However, *Rust* dealt with a premature notice of appeal filed prior to the district court entering a written, final judgment and is plainly inapplicable here, where appellants are appealing from a final, written judgment. *Cf. Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1312, 971 P.2d 1251, 1256 (1998) (explaining that this court will review interlocutory decisions that "are not independently appealable" in an appeal from a final judgment). Moreover, NRS 47.040 provides both the authority and framework for addressing alleged error in evidentiary rulings, depending on whether a party preserved error through objection, as we have recognized in various cases. *See, e.g., Rimer v. State*, 131 Nev. 307, 332, 351 P.3d 697, 715 (2015) (explaining that a party preserves a claim of error by objecting and stating the grounds for the objection at trial); *In re J.D.N.*, 128 Nev. 462, 468-69, 283 P.3d 842, 846-47 (2012) (observing that the scope of review depends on whether a party preserved error by objecting to the admission of evidence). Thus, we have the ability to review appellants' evidentiary challenges, and nothing in *Rust* precludes our review.

give a definitive ruling on a pretrial motion, the contemporaneous objection rule requires the party to object at trial in order to preserve its argument on appeal); *Landmark Hotel & Casino, Inc. v. Moore*, 104 Nev. 297, 299, 757 P.2d 361, 362 (1988) ("[F]ailure to object to a ruling or order of the court results in waiver of the objection and such objection may not be considered on appeal."); *see also* NRS 47.040(1)(a) (requiring "a timely objection or motion to strike . . . stating the specific ground of objection" to preserve the issue for appeal); *cf. In re J.D.N.*, 128 Nev. 462, 468, 283 P.3d 842, 846 (2012) (explaining that a party preserves a claim of error by objecting and stating the grounds for the objection at trial). Taken together, these authorities make clear that a party need not file a motion for a new trial to raise a preserved issue on appeal or request a new trial as a remedy for alleged errors below. Such a holding is consistent with both the federal approach and our past decisions considering a preserved error without the appellant having moved for a new trial below.[3] *See, e.g., Richardson v. Oldham*, 12 F.3d 1373, 1377 (5th Cir. 1994) ("Filing a Rule 59 motion is not a prerequisite to taking an appeal . . . ."); *Floyd v. Laws*, 929 F.2d 1390, 1400-01 (9th Cir. 1991) ("A question raised and ruled upon need not be raised again on a motion for a new trial to preserve it for review.");

---

[3]While NRAP 3A(a) does not require a party move for a new trial prior to bringing an appeal, we note that there are several practical benefits to doing so. First, it allows the district court to correct alleged errors, which allows for the prompt resolution of a case without potentially unnecessary appellate litigation. Second, it develops a better record for appellate review as the parties crystalize their arguments while giving the district court an opportunity to fully articulate the reasoning for its evidentiary rulings. Thus, while not required, moving for a new trial prior to pursuing an appeal provides distinct benefits that litigants should consider prior to bringing an appeal.

SUPREME COURT
OF
NEVADA

(O) 1947A

8

*LaBarbera v. Wynn Las Vegas, LLC*, 134 Nev. 393, 398, 422 P.3d 138, 142 (2018) (concluding the district court abused its discretion by excluding certain pieces of evidence and remanding for a new trial without mentioning whether the appellant filed a motion for a new trial before pursuing the appeal).

Respondents' contrary arguments are not persuasive, as the Nevada cases on which they rely are either inapposite or distinguishable. Neither *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 623 P.2d 981 (1981), nor *Schuck v. Signature Flight Support of Nevada, Inc.*, 126 Nev. 434, 245 P.3d 542 (2010), require a motion for a new trial as a prerequisite to filing an appeal regarding an otherwise preserved error. In *Old Aztec*, this court declined to consider the appellant's argument regarding its counterclaim because it failed "to direct the trial court's attention to its asserted omission to mention the counterclaim expressly in its judgment." 97 Nev. at 52-53, 623 P.2d at 983-84. It thus determined that the waiver doctrine rendered the claim of unpreserved error unreviewable. In *Schuck*, the appellant challenged summary judgment by raising several new legal arguments, which this court refused to consider for the first time on appeal. 126 Nev. at 436-38, 245 P.3d at 544-45. Neither case addressed whether a motion for a new trial is required to preserve a claim of error for appellate review. Further, the cases from other jurisdictions to which respondents point are factually dissimilar in that the appellants either failed to preserve their appellate arguments with timely objections at trial or the jurisdictions, unlike Nevada, have procedural rules requiring a new trial motion before appealing. *See, e.g., State v. Davis*, 250 P.2d 548, 549 (Wash. 1952) (concluding that the appellant, who failed to object at the time the prejudicial conduct occurred or to preserve the issue raised on appeal in any

way, waived his argument, while observing that a new trial motion gives "the trial court an opportunity to pass upon questions not before submitted for its ruling" without addressing whether the appellant would be required to seek a new trial if he had objected to the prejudicial conduct during trial); *Spotts v. Spotts*, 55 S.W.2d 977, 980 (Mo. 1932) (applying a Missouri statute in concluding that appellant must object and file a new trial motion to preserve a "writ of error" challenge to a jury verdict). Accordingly, appellants did not need to move for a new trial below to raise preserved issues on appeal or to request a new trial as an appellate remedy for those alleged errors.[4]

*The district court abused its discretion by allowing evidence of the* Center *malpractice case, and the error is not harmless*

Appellants argue that the district court abused its discretion in admitting evidence of the *Center* case because that evidence is irrelevant, since an unrelated, prior medical malpractice suit does not address whether Rives's conduct in this specific case fell below the applicable standard of care. They further contend that the *Center* case evidence, even if relevant,

_____

[4]Respondents' remaining arguments on this issue are without merit. They conflate the abuse-of-discretion standard of review that applies to an order granting or denying a motion for a new trial with the appellate remedy of a new trial for harmful error. *See* NRCP 61 (addressing correction of errors that affect the party's substantial rights at all stages of the proceeding). Although they point out that there is no "order to review," appellants did not file a motion for a new trial, and thus, this court is not tasked with determining whether the district court abused its discretion by denying a motion for a new trial. Instead, appellants seek our review in evaluating whether the district court erred by admitting or excluding several pieces of evidence and whether those errors, preserved by timely objections, are harmful. Similarly, respondents' argument that appellants seek to "convert this Court into a factfinder" is misplaced, as this court is merely conducting routine error analysis of several evidentiary rulings.

is inadmissible because the danger of unfair prejudice, confusing the issues, or misleading the jury substantially outweighs its probative value. We agree.

Generally, relevant evidence is admissible, while irrelevant evidence is not admissible. NRS 48.025. Evidence is relevant if it "ha[s] any tendency to make the existence of any fact . . . of consequence . . . more or less probable than it would be without the evidence." NRS 48.015. However, relevant "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1). While evidence of a doctor's other acts is inadmissible to show propensity, such evidence "may . . . be admissible for other purposes," such as to show "absence of mistake or accident." NRS 48.045(2).

Reviewing for an abuse of discretion, *Hansen v. Universal Health Servs. of Nev., Inc.*, 115 Nev. 24, 27, 974 P.2d 1158, 1160 (1999), we conclude that respondents did not present evidence regarding the *Center* case for an admissible, relevant purpose, and thus it should have been excluded. While respondents argue that the case is relevant to establish that Rives's actions would cause foreseeable harm, the fact that Rives was sued or acted inconsistently with the standard of care in a prior case does not make it more or less probable that he acted below the standard of care in *this* case. *See Stottlemyer v. Ghramm*, 597 S.E.2d 191, 194 (Va. 2004) (affirming district court's exclusion of evidence of the doctor-defendant's past medical malpractice suits because "[e]vidence that a defendant was negligent on a prior occasion simply has no relevance or bearing upon whether the defendant was negligent during the occasion that is the subject of the litigation"); *cf. Mitchell v. Eighth Judicial Dist. Court*, 131 Nev. 163,

SUPREME COURT
OF
NEVADA

(O) 1947A

11

174-75, 359 P.3d 1096, 1103-04 (2015) ("Of legal consequence to a medical malpractice claim is whether the practitioner's conduct fell below the standard of care, not why. Put another way, [plaintiff] wins if she shows that [the practitioner's] misadministration of the anesthetic fell below the standard of care and caused [the victim's] injuries; legally, [the practitioner's] diminished capacity doesn't matter." (emphases and citation omitted)). Thus, the alleged foreseeability of the harm is not relevant in this kind of case, aside from the establishment of the standard of care through experts. *See Rees v. Roderiques*, 101 Nev. 302, 304, 701 P.2d 1017, 1019 (1985) ("The standard of care to be applied in a medical malpractice case is to be established by the testimony of expert witnesses with knowledge of the prevailing standards.").

Even if the *Center* case evidence had been offered for an admissible purpose, we conclude the district court abused its discretion in admitting the evidence and allowing it to be presented so extensively because the danger of unfair prejudice, confusing the issues, or misleading the jury substantially outweighed the probative value of that evidence. The *Center* case is somewhat factually similar to this case, but it arises from a different surgery on a different patient on a different day with different consequences. Introduction of such evidence injects a collateral matter into appellants' trial that would likely confuse the jury. *See Hansen*, 115 Nev. at 27-28, 974 P.2d at 1160 (affirming a district court's exclusion of a report containing brief descriptions of medical complications experienced by the doctor-defendant's patients who underwent the same surgery as the plaintiff because "injecting these other cases into [the plaintiff's] trial would prolong the trial, confuse the issues and divert the jury from [the plaintiff's] case to collateral matters"); *see also Kunnanz v. Edge*, 515 N.W.2d 167, 171

SUPREME COURT
OF
NEVADA

(O) 1947A

12

(N.D. 1994) ("The purpose of [plaintiffs'] proffered evidence was to show that [defendant] was negligent in treating [a third party]. However, that evidence was not admissible to show that [defendant] was negligent in treating [plaintiff], and its introduction would have injected a collateral matter into this trial and confused the jury."). Further, in addressing whether appellants should be sanctioned for intentional concealment of the *Center* case, respondents acknowledged that they thought the case was useful to show propensity when they stated that appellants "didn't want us to know what [Rives] knew, what his knowledge level was. [Appellants] didn't want us to know that he had gone through this exact same thing, had the same opportunity to make good decisions and protect this patient but failed to do so." Nevada law precludes admitting evidence for propensity purposes.[5] NRS 48.045(2) (prohibiting use of other wrongs or acts to prove a person's character or to show the person acted in conformity therewith); *Bongiovi v Sullivan*, 122 Nev. 556, 574, 138 P.3d 433, 447 (2006) (holding that prior bad-acts evidence is inadmissible to prove propensity); *see also Bair v. Callahan*, 664 F.3d 1225, 1229 (8th Cir. 2012) (concluding that evidence of prior malpractice is inadmissible under Federal Rule of Evidence (FRE) 404, which prohibits evidence of a person's character to prove that on a particular occasion the person acted in accordance therewith, because it allows the jury to infer the doctor has a propensity for

_____

[5]This opinion does not concern the exception to this rule in NRS 48.045(3), which "permits the district court to admit evidence of a separate sexual offense for purposes of proving propensity in a sexual offense prosecution" so long as that evidence is relevant, proven by a preponderance of the evidence, and the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. *Franks v. State*, 135 Nev. 1, 2, 432 P.3d 752, 754 (2019).

negligence); *Lai v. Sagle*, 818 A.2d 237, 247 (Md. 2003) ("[S]imilar acts of prior malpractice litigation should be excluded to prevent a jury from concluding that a doctor has a propensity to commit medical malpractice.").

Respondents' arguments to the contrary are unpersuasive. First, they argue "that bias is a relevant inquiry into the *Center* case" but fail to explain—here or below—how a prior medical malpractice case shows that the doctor-defendant is biased. Thus, we need not consider this argument. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that this court will not consider claims unsupported by cogent argument and relevant authority). Second, they argue that the *Center* case is admissible under NRS 48.045(2) as modus operandi evidence. However, modus operandi is a narrow exception typically applied in criminal cases when there is a question regarding the defendant's identity and a defendant has committed prior offenses in the same unique way that would establish he is the offender in the present case. *See Rosky v. State*, 121 Nev. 184, 197, 111 P.3d 690, 698 (2005) (holding that the district court abused its discretion by admitting evidence of the defendant's prior bad acts as modus operandi evidence because the defendant's identity was not at issue during the trial). Here, it appears respondents argue that the modus operandi exception applies to show Rives's negligent surgical techniques, which is an inadmissible propensity use of the evidence, as it encourages the jury to infer from Rives's prior act that Rives has a propensity to commit medical malpractice; clearly, there was no question about Rives's identity here.[6]

_____

[6]At oral argument before this court, respondents asserted that the evidence of the *Center* case was admissible for impeachment purposes. But we need not consider this argument, as it was raised for the first time at

Further, respondents' arguments to the contrary notwithstanding, the *Center* case evidence is not admissible to show knowledge. The knowledge exception is typically applied to refute, among other things, a defendant's claim that he was unaware of the illegality of his conduct, not that he was aware his professional actions were negligent on an earlier occasion, and thus, he knew he could potentially injure another party in rendering similar professional services. *See, e.g., Fields v. State*, 125 Nev. 785, 792, 220 P.3d 709, 714 (2009) (explaining that a defendant's "knowing participation in prior bad acts with" coconspirators may be used to refute the defendant's claim that he was an unwitting or innocent bystander to the crime); *Cirillo v. State*, 96 Nev. 489, 492, 611 P.2d 1093, 1095 (1980) (concluding that "evidence of previous instances of [drug] possession may be used to show the defendant's knowledge of the controlled nature of a substance, when such knowledge is an element of the offense charged"); *see also United States v. Vo*, 413 F.3d 1010, 1019 (9th Cir. 2005) (concluding that the defendant's prior conviction for drug trafficking was admissible under FRE 404(b) because it "was evidence of his knowledge of drug trafficking and distribution in general" and "tended to show that [the defendant] was familiar with distribution of illegal drugs and that his actions in this case were not an accident or a mistake"). Moreover, other jurisdictions that addressed this issue have concluded that prior medical

---

oral argument. *See State ex rel. Dep't of Highways v. Pinson*, 65 Nev. 510, 530, 199 P.2d 631, 641 (1948) ("The parties, in oral arguments, are confined to issues or matters properly before the court, and we can consider nothing else . . . ."). Even if we consider this argument, however, the numerous times respondents mentioned the *Center* case and the scope of what was mentioned far exceeded what would have been permissible for impeachment purposes.

SUPREME COURT
OF
NEVADA


(O) 1947A



malpractice suits do not fall within the knowledge exception, and we find their reasoning persuasive. *See, e.g., Bair*, 664 F.3d at 1229 (rejecting the appellant's argument that the doctor's past treatment of other patients is admissible to show the doctor did not know how to properly carry out the surgery because that "is not the kind of 'knowledge' Rule 404(b) contemplates," as the doctor "had the knowledge to perform the surgery" due to his training and the appellant's evidence allows the jury to infer the defendant "had a propensity to commit malpractice" (internal quotation marks omitted)).

Because the *Center* case was mentioned over 180 times during trial, including details of how the patient went septic and her legs were amputated, similar to—but worse than—the injuries suffered by Farris, the error in admitting it was not harmless. Rather, the evidence had no probative value, drew the jury's attention to a collateral matter, and likely led to the jury drawing improper conclusions about Rives's propensity to commit malpractice, unfairly prejudicing him.[7] *See Bongiovi*, 122 Nev. at

---

[7]While the district court may have correctly determined that Rives's discovery behavior warranted sanctions, it nonetheless abused its discretion by giving an adverse-inference instruction. *See Bass-Davis v. Davis*, 122 Nev. 442, 447-48, 134 P.3d 103, 106 (2006) (reviewing a district court's decision to give an adverse-inference instruction for an abuse of discretion). As discussed above, the *Center* case evidence was inadmissible, and a district court may not admit otherwise inadmissible evidence as a discovery sanction. *See* NRS 48.025(2) ("Evidence which is not relevant is not admissible."); NRS 48.035(1) (providing that otherwise relevant evidence is not admissible if the danger of unfair prejudice substantially outweighs the evidence's probative value). Further, an adverse inference instruction is appropriate when evidence is lost or destroyed. *See Bass-Davis*, 122 Nev. at 448-49, 134 P.3d at 106-07. Here, the evidence was not lost or destroyed, and Farris presented details regarding the *Center* case at trial. Accordingly, the adverse inference instruction was improper.



575, 138 P.3d at 447 (explaining that evidence is inadmissible if the danger of unfair prejudice substantially outweighs the evidence's probative value). Thus, we reverse the district court's judgment and remand for a new trial.[8] *See Khoury v. Seastrand*, 132 Nev. 520, 539, 377 P.3d 81, 94 (2016) (concluding that an error is prejudicial, and thus reversible, when it affects the party's substantial rights).

## CONCLUSION

An appellant who made an evidentiary objection during trial need not move for a new trial in the district court before filing an appeal to preserve the appellate remedy of reversal and remand for a new trial. Further, an appellate court has jurisdiction to review a district court's oral evidentiary rulings made during the course of trial on appeal from a final judgment. Additionally, evidence of a doctor's prior medical malpractice suits is generally not relevant to whether the doctor met the standard of care in the current malpractice lawsuit. On this record, we conclude the district court abused its discretion by admitting evidence of the *Center* case and that the error was not harmless due to the evidence's tendency to encourage the jury to reach an improper propensity conclusion, as well as to cause unfair prejudice to Rives due to the severe injuries suffered by that

---

[8]In light of our conclusion, we need not address appellants' remaining arguments. Similarly, we vacate the district court's order awarding attorney fees and costs. As we are remanding for a new trial, the cross-appeal regarding the district court's reduction of the noneconomic damages awarded is similarly moot.

patient.  Accordingly, we reverse the district court's judgment, vacate the corresponding fees and costs order, and remand for a new trial.

_____, J.
Cadish

We concur:

_____ C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A